**8**

STATE of Missouri,
Plaintiff/Respondent,

v.

Kevin STATES, Defendant/Appellant.

No. 57862.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 12, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 1991.

Application to Transfer Denied
June 11, 1991.

Charles M. Shaw, James Jay Knappenberger, Christopher P. Simms, St. Louis, for defendant, appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for plaintiff, respondent.

REINHARD, Presiding Judge.

Defendant appeals after his conviction by a jury of assault in the first degree, § 565.050, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986. He was sentenced by the court as a prior offender, § 558.016, RSMo 1986, to serve fifteen years and thirty years. These sentences were to run concurrently. We affirm.

The altercation that led to defendant's conviction occurred in front of the house where defendant resided with his girlfriend, her brother, and her children. Craig Saulberry and Andre Carter, a friend of Saulberry, came to defendant's residence to discuss a drug debt. There was conflicting evidence at trial as to whether the debt was owed to defendant or whether defendant owed money to Saulberry. Several witnesses testified that they had seen defendant with a gun earlier in the day and that he had threatened Saulberry. During the argument shots were fired. Andre Carter was hit in the arm and head by bullets and expired soon after. Defendant testified and admitted firing two shots at Saulberry as he fled but denied shooting Carter. He claimed that Saulberry had accidentally shot Carter while defendant and Saulberry were exchanging fire. He stated that Saulberry wanted him to sell drugs, an activity he had ceased, and was angry when he refused. He claimed that Saulberry had a gun when he arrived. The murder weapon was never found.

At trial, the state's principal witnesses were friends of Saulberry who had witnessed portions of the events which led to the murder, police officers who searched the area for evidence, and the police chief who supervised the interrogation of defendant. Defendant testified in his own behalf. The jury was unable to agree on Count One which charged defendant with second degree murder in the death of Andre Carter. Defendant was found guilty of first degree assault and armed criminal action. These charges arose from the shots he fired at Craig Saulberry.

This case again comes to us after a remand. *State v. States*, 809 S.W.2d 6 (Mo. App.1990). The defendant had claimed that the striking of juror Bonner was racially motivated. Defendant, the victims, and most of the witnesses were black. The panel of 28 included two blacks. During voir dire the prosecutor struck one of two black venire members. The other served on the jury. The court, apparently relying on *State v. Andrews*, 770 S.W.2d 424 (Mo. App.1989), did not require prosecutorial explanations for the peremptory strike. We held that the rule announced by our supreme court in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), mandated such an explanation and we remanded this case for a hearing.

On remand the trial court held a hearing and an explanation was made. During questioning by the defense attorney of Bonner, a black woman, counsel asked if she were related to St. Louis University star basketball player Anthony Bonner. She said she was related to him "by marriage." Counsel showed great familiarity with Anthony and the basketball team and mentioned that there was a game that night. The prosecutor at the remand hearing said that he observed the juror and her responses to both him and defense attorney. He said that, in his opinion, defense counsel had personalized with juror Bonner to a greater extent than with the other jurors, perhaps because of her relationship to Anthony Bonner. He noticed that she was smiling at the defense counsel during the voir dire but not at the prosecutor. He felt that she was on the side of the defense, as he did with white juror Loeb whom he also struck. The prosecutor stated that he didn't consider this a racial case; the defendant and the victim were both black as were most of the witnesses. "I just did not see there was any racial problem with the case whatsoever." The trial court held that the prosecutor did not use his peremptory challenges in a racially discriminatory manner.

The prosecutor's explanation appears to us to constitute a "reasonable hunch" as discussed in *State v. Antwine, supra,* and thus provided a racially neutral explanation for the striking of juror Bonner. Furthermore the prosecutor did not strike all of the black jurors, using only one of his six strikes to remove one of the two black jurors on the venire. In light of the record before us *Batson* and *Antwine* were fully complied with.[1] We now consider defendant's other complaints.

Defendant first contends that the trial court erred in overruling defendant's Motion To Suppress and Exclude statements made by the defendant after his arrest. He claims that the circumstances of interrogation rendered his statements involuntary because:

> The Appellant had been incarcerated and without sleep during the night of December 21. Appellant was continuously and repeatedly interrogated during this time. Finally, Appellant was approached by ex-Chief of Police Buchanan with photographs of the dissected body of a young man and told that he was charged with the murder. By this point ... Appellant's will was overborne and it was impossible for him to do or state anything truly in a voluntary manner.

The statement challenged by defendant was related by Chief Buchanan:

> He told me that Andre Carter and Craig Saulberry came over to rob him, and that an argument ensued, and Craig Saulberry pulled out a .38 caliber revolver and began shooting at him. And he said that he had a .22 caliber pistol, and he began to fire several shots in return and during the course of gunfire, Craig Saulberry used the victim as a shield, and accidentally shot him in the head.

Initially we note that the defendant did not object and therefore his complaint is not preserved for review. *State v. Guy,* 770 S.W.2d 362 (Mo.App.1989). We have, however, reviewed the evidence and find that under the totality of circumstances the con-

fession was voluntary and properly admitted into evidence. *State v. Moore,* 744 S.W.2d 479, 480 (Mo.App.1988). In addition, since defendant's testimony was the same as the contents of the statement defendant seeks to suppress, any error in admitting defendant's statements is cured by defendant's in-court confirmation of the truth contained in the out-of-court statements. *State v. Ryder,* 598 S.W.2d 526, 527 (Mo.App.1980).

Defendant next contends that the trial court erred in refusing to discharge the jury venire and seat a new panel. Defendant claims that the panel was impermissibly tainted by a comment made by a prospective juror. When the prosecutor asked the panel if they had heard of defendant's counsel, a venireperson replied that she had "read articles about him" that had emphasized his "courtroom theatrics." Questioning of this venireperson was then moved out of the range of hearing of the other veniremembers. The trial court has great discretion in determining whether a jury panel should be dismissed. *State v. Greathouse,* 694 S.W.2d 903, 909 (Mo.App. 1985). We will reverse only if we determine that the trial court has abused its discretion. *State v. Mentola,* 691 S.W.2d 420, 422 (Mo.App.1985). The defendant has the burden to show prejudice. *State v. Releford,* 750 S.W.2d 539, 543 (Mo.App. 1988). Even a "broadly judgmental statement" or a "derogatory remark about the defendant" *Greathouse* at 909, does not automatically require dismissal of the panel. *Id.* Here, clearly, the remark by the venire member was both short and ambiguous in meaning. We see no prejudice to defendant.

Defendant asserts that the trial court erred in admitting the testimony of Clemisia Wilks under the "victim's state of mind" exception to the hearsay rule. First we note that our review of the defendant's brief, his Motion For New Trial and the transcript revealed three different versions of Wilks' testimony. In the transcript,

---

1. Subsequent to our original decision, the Supreme Court of Missouri in *State v. Burgess,* 800 S.W.2d 743 (Mo. banc 1990), and our court in

*State v. Hunter,* 802 S.W.2d 201 (Mo.App.1991), affirmed cases wherein no neutral explanations were made.

which is clearly the only reliable source, Wilks only testified to the fact that Craig Saulberry intended to go to defendant's house and that when Andre Carter expressed his desire to accompany him Saulberry refused and left. Her testimony then turned to describing events she observed which helped to explain how Carter later arrived at defendant's residence. "The rule against admissibility of hearsay is inapplicable where the testimony is offered to explain subsequent conduct rather than as proof of the matters asserted therein." *State v. Vaughn,* 782 S.W.2d 83, 84 (Mo.App.1989). We conclude from our reading of the record that the challenged testimony tended to show the state of mind of the victim and to explain his later presence at defendant's residence. The testimony was thus admissible.

 In two related points, defendant asserts error in admission of testimony from two police officers concerning their activities during the investigation of these crimes. Because we find no error and no prejudice to defendant we decline to include the details of this testimony. We only note that it is well established that the type of testimony defendant complains of is admissible to:

> explain the officers' conduct, supplying relevant background and continuity to the action. [Cite omitted] ... Under this rule the triers of fact can be provided a portrayal of the events in question, more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or reasons for the officers' subsequent activities. *State v. Brooks,* 618 S.W.2d 22, 25 (Mo. banc 1981).

We affirm.

STEPHAN and CRANE, JJ., concur.