**STATE of Missouri, Respondent,**

v.

**Mark SPRINKLE, Appellant.**

**No. WD 62703.**

Missouri Court of Appeals,
Western District.

Nov. 25, 2003.

Rehearing Denied Jan. 27, 2004.

656

James R. Wyrsch, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane D. Crouse, Richard A. Starnes, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., PATRICIA A. BRECKENRIDGE and PAUL M. SPINDEN, JJ.

THOMAS H. NEWTON, Judge.

Mr. Mark Sprinkle was convicted of two counts of child molestation. He appeals the convictions and raises several points for our review. Mr. Sprinkle claims the indictment was not specific enough when it stated the abuse happened within the three months the victim lived in his home. He asserts the trial court should not have admitted the victim's out-of-court statements through other witnesses. Mr. Sprinkle argues that the corroboration rule applies in this case, requiring additional evidence to support the victim's testimony. Finally, he claims the trial court should have quashed the venire panel based on allegedly prejudicial comments made by some venire panel members. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Mark Spinkle, was charged by indictment with two counts of first-degree child molestation in violation of section 566.067.[1] He was convicted by a jury

---

1. Unless otherwise indicated, all statutory references are to RSMo.2000.

on both counts and sentenced to two consecutive terms of six years each.

In the spring of 1997, approximately April through June, K., the alleged victim, lived with her aunt and uncle, Kristie and Mark Sprinkle. She was seven years old at that time. Her mother, Kim Hopkins, was going through a divorce and had moved into a different school district. K. stayed with her aunt and uncle to finish first grade at the school that she had been attending that year. K. generally went to stay with her mom over the weekends.

While living with her aunt and uncle, K. slept in her cousin Andrew's bedroom. Her aunt was pregnant and having trouble sleeping, so she generally slept alone in the other bedroom. Her uncle, the appellant, often slept in the living room.

K. testified that on six or seven different nights while staying with the Sprinkles, while everyone was asleep, Mr. Sprinkle came into the room where she was sleeping and brought her out into the living room. On each occasion, Mr. Sprinkle would take off all of her clothes and touch her vagina with his hand. K. said this generally would happen around midnight. On one other morning, around 7 a.m., he took K. into the living room, pulled down his underpants and had her touch his penis. Mr. Sprinkle made her rub his penis until "white stuff came out." He also tried to get her to lick his penis, but she refused. Mr. Sprinkle told K. not to tell anyone.

K. testified that she tried to tell her aunt about it once while she was still staying there, but Mr. Sprinkle stopped her and she did not try again. Her aunt, however, testified that this did not happen.

In March of 1998, when K. was eight years old, K. attended a school program about sexual abuse sponsored by the Metropolitan Organization to Counter Sexual Assault (MOCSA). As a part of the program, a video was shown about a girl who was touched inappropriately by her uncle. The MOCSA counselor told the students that if any of them had been subjected to a "bad touch" they should tell the counselor. K. then told the counselor what Mr. Sprinkle had done to her. The counselor told K. to go home and tell her mother, which she did that evening.

The prosecution moved to admit K.'s out-of-court statements to Ms. Hopkins, Ms. Watson, the school counselor, and Ms. Donalin, a forensic interviewer with the Child Protection Center, about the abuse under section 491.075. A pre-trial hearing was held on this motion.[2] Ms. Hopkins testified at the hearing that K. initially said that Mr. Sprinkle had molested her when she stayed with him the year before. Later K. also told her mom that Mr. Sprinkle "would rub her private area and he would make her rub his private area."

K. then began to see Stephanie Watson, a school counselor, to discuss the abuse. Ms. Watson testified at the hearing that K. said that Mr. Sprinkle sexually abused her. When K. met with Ms. Watson in March of 1998 she said, "her uncle had her try to get stuff to come out of his thing." When she met with Ms. Watson in September of 1998, she said, "white stuff shot out of his thing." K. did not tell Ms. Watson that Mr. Sprinkle tried to touch her.

Ms. Donalin conducted a forensic interview with K. in September of 1998, to discuss the abuse. This was videotaped

---

**2.** The record does not contain anything about the trial judge's decision on this motion other than a note on the docket sheet that the motion was sustained for all three witnesses. But all three witnesses testified at trial, and defense counsel lodged a continuing objection to their testimony.

and the tape was shown at trial. Ms. Donalin testified at the hearing that K. disclosed that Mr. Sprinkle had her touch his penis and that he touched her vagina and buttocks. K. also said that "white goo came out of his penis." During the hearing, defense counsel extensively questioned Ms. Donalin about her interview techniques and about points where K. got confused during the interview.

The jury found Mr. Sprinkle guilty on both counts. Mr. Sprinkle brings four points on appeal. Mr. Sprinkle claims the indictment should have been dismissed for failing to state the specific times when the abuse occurred, or that he should have been granted his request for a bill of particulars. Mr. Sprinkle also claims the trial court erred in admitting K.'s out-of-court statements to Ms. Hopkins, Ms. Watson, and Ms. Donalin under section 491.075 because they lacked adequate indicia of reliability. Mr. Sprinkle claims he should have been granted an acquittal because the evidence was insufficient to sustain a jury verdict because K.'s testimony was contradictory and, therefore, needed to be corroborated. Finally, Mr. Sprinkle claims that he should have been granted a mistrial or the venire panel should have been quashed because of prejudicial comments made by members of the venire panel.

## II. STANDARD OF REVIEW

■ The trial court's decision whether to grant a motion to dismiss an indictment is reviewed for abuse of discretion. *State v. Floyd,* 18 S.W.3d 126, 133 (Mo. App. S.D.2000). The trial court has discretion to direct the filing of a bill of particulars, and denial of a motion for a bill of particulars is also reviewed for abuse of discretion. *State v. Larson,* 941 S.W.2d 847, 851 (Mo.App. W.D.1997). Even if the trial court abuses its discretion, the defendant still must show he was

prejudiced by denial of that motion. *State v. Armentrout,* 8 S.W.3d 99, 109 (Mo. banc 1999).

■ The trial court's decision to admit hearsay testimony under section 491.075 is reviewed for abuse of discretion. *State v. Porras,* 84 S.W.3d 153, 156 (Mo. App. W.D.2002). Even if the trial court abuses its discretion in allowing evidence in, appellant must show the admission of the evidence was prejudicial to be entitled to relief. *State v. Danikas,* 11 S.W.3d 782, 792 (Mo.App. W.D.1999).

■ In determining if the evidence is sufficient to support the verdict, all evidence and inferences reasonably drawn therefrom are viewed in the light most favorable to the verdict, and contrary evidence and inferences are disregarded. *State v. Gatewood,* 965 S.W.2d 852, 856 (Mo.App. W.D.1998). Review is limited to determining whether the evidence was sufficient that a reasonable person could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ A trial court has broad discretion in deciding whether a jury panel should be dismissed and the court's ruling will not be disturbed unless there is a clear abuse of discretion. *State v. Thompson,* 985 S.W.2d 779, 789 (Mo. banc 1999). "The declaration of a mistrial is a drastic remedy to be granted only in extraordinary circumstances where prejudice to the defendant cannot be removed by any other means." *State v. Kelley,* 83 S.W.3d 36, 42 (Mo.App. W.D.2002). The court reviews the denial of a motion for mistrial for abuse of discretion. *State v. Costa,* 11 S.W.3d 670, 675 (Mo.App. W.D.1999).

## III. LEGAL ANALYSIS

### A. The indictment was adequate and a bill of particulars was not necessary

■ Mr. Sprinkle's first point on appeal is that the trial court erred in failing

to dismiss the indictment, or in the alternative, to grant his request for a bill of particulars. He asserts that the charges in the indictment did not provide him adequate notice of the charges because they did not state the times during which the alleged crimes occurred with sufficient particularity. Mr. Sprinkle claims that he needed more specific times to cultivate the defenses of alibi and lack of access to the victim.

Specifically, Mr. Sprinkle objects to the fact that both counts of the indictment say the crimes were committed "on or between April 1, 1997, and July 1, 1997." He claims this broad window of time, with a failure to particularly state the time when the acts occurred, requires a dismissal of both counts or a bill of particulars providing more particularity.

 The purpose of an indictment is to inform the defendant of the charges against him so he may prepare an adequate defense. *State v. Gheen,* 41 S.W.3d 598, 602 (Mo.App. W.D.2001). The indictment must contain all essential elements of the offense and all the facts constituting the offense. *Id.* If the indictment fails to sufficiently inform the defendant of the particulars of the offense, it is subject to a motion for a bill of particulars under Rule 23.04.[3] *Larson,* 941 S.W.2d at 851. Mr. Sprinkle complains only that specific times are not listed and, therefore, he was not sufficiently informed about the offense to ably prepare a defense.

 The claim that an indictment is not specific enough because the dates are too broad is often made in sexual abuse cases. *See, e.g., State v. Weiler,* 801 S.W.2d 417, 420 (Mo.App. W.D.1990) (stating that defendant's complaint that the dates are not specific enough is often raised in cases of sex offenses against chil-

dren and ruled against defendants time after time). In sex offense cases, time is not of the essence. *State v. Sexton,* 929 S.W.2d 909, 917 (Mo.App. W.D.1996); *State v. Mills,* 872 S.W.2d 875, 878 (Mo. App. S.D.1994). Further, the prosecution is not limited in its evidence to the precise date stated, but may prove the offense was committed any day prior to the date of the indictment and within the period of limitation. *Sexton,* 929 S.W.2d at 917.

Mr. Sprinkle claims the broad time period hindered his ability to marshal the potential defenses of alibi or lack of access because K. was not in his home exclusively during that three-month period since she went to stay with her mom on most of the weekends. He points out that K. told Ms. Donalin that the day Mr. Sprinkle made her touch his penis was on a Saturday. If she went to her mother's home on most weekends then he may not have had access to her on any Saturdays, or at least, that Saturday in particular. He attempts to distinguish the cases saying that time is not of the essence in sexual abuse prosecutions by claiming this is a circumstance where time does matter in order to adequately defend himself. *See State v. Ellis,* 820 S.W.2d 699, 701 (Mo.App. E.D.1991) (stating that "[i]t is not necessary here for us to discuss the circumstances under which imprecision in identifying the time or date of the alleged sex occurrence may place such a burden on the defendant's ability to defend himself that fundamental fairness and due process require greater specificity" and suggesting there may be times when the time period must be specific); *State v. Burch,* 740 S.W.2d 293, 296 (Mo.App. E.D.1987) ("Under other circumstances we might agree this broad time span could create such a problem [preparing a defense]. However, in this case de-

---

3. Unless otherwise indicated, all rules refer to Missouri Court Rules (2003).

fendant does not suggest a particular defense he was unable to advance.").

But this case, with a time period of only three months, does not present circumstances any different from the numerous other cases that found an indictment covering a broad period of time was adequate. *See Sexton*, 929 S.W.2d at 917 (time period in information was five and a half months); *Weiler*, 801 S.W.2d at 418 (charged offenses covered time span of four and a half months); *State v. Brass*, 781 S.W.2d 565, 566 (Mo.App. E.D.1989) (indictment covered a time span of four years and six months); *State v. Moesch*, 738 S.W.2d 585, 586 (Mo.App. E.D.1987) (indictment covered period of 3 months); *Burch*, 740 S.W.2d at 296 (indictment covered time span of about eight months).

█ Even if K. did not stay in the Sprinkle home continuously during those three months, Mr. Sprinkle had access to her at least as often as many defendants in other cases. *See Weiler*, 801 S.W.2d at 418 (defendant was a friend of the victim's family and performed gratuitous services for them, including baby-sitting at various times); *Moesch*, 738 S.W.2d at 588 (victim was admittedly in defendant's custody frequently throughout the charged time and spent every other weekend in his residence; alibi and non-access were not viable defenses); *Burch*, 740 S.W.2d at 296 (victim was in defendant's custody on alternate weekends). Although K. said that the time she was forced to touch his penis was on a Saturday, she did not give specific days for any of the other episodes of sexual abuse. Mr. Sprinkle would have been precluded from using the defenses of alibi and lack of access for those other occasions. Time is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse, particularly when there is a

continuous series of abusive acts. *Burch*, 740 S.W.2d at 296.

The indictment sufficiently informed Mr. Sprinkle of the charges against him and did not require dismissal. Because the indictment was sufficient, the trial court did not err in refusing to grant Mr. Sprinkle's motion for a bill of particulars. Point one is denied.

**B. The admission of K.'s out-of-court statements under section 491.075**

█ Mr. Sprinkle's second point on appeal is that the trial court erred in admitting K.'s out-of-court statements about the abuse under section 491.075. He claims the statements lacked adequate indicia of reliability because they lacked spontaneity and consistency, there was a motive to fabricate, K.'s knowledge of sexual detail was explainable, and there was a significant lapse of time between the occurrence of the alleged incident and K.'s first report of it.

█ Although criminal defendants are entitled to confront witnesses against them under the Confrontation Clause of the Sixth Amendment, made applicable to states through the Fourteenth Amendment, there are exceptions to this rule. *Costa*, 11 S.W.3d at 679. The Missouri legislature has created a hearsay exception in child sexual abuse cases with section 491.075, which states in pertinent part:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo., performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the

jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) (a) The child testifies at the proceedings;

The Missouri courts have adopted a totality of the circumstances test to determine the reliability of a child's out-of-court statements for the purposes of section 491.075, including consideration of several non-exclusive factors: (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of a motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age. *Porras*, 84 S.W.3d at 157. The lapse of time between when the acts occurred and when the victim reported them is also a factor to consider. *State v. Foster*, 854 S.W.2d 1, 6 (Mo.App. W.D.1993). The trial court here held a pre-trial hearing to consider admission of K.'s statements to Ms. Hopkins, Ms. Watson, and Ms. Donalin, and ruled that all three were admissible.[4]

■ Mr. Sprinkle attacks the reliability of K.'s statements under all of the factors except K.'s mental state. In discussing this point, Mr. Sprinkle focuses not only on evidence adduced at the section 491.075 hearing, but also on evidence brought out at trial. The trial court decides whether or not to admit the victim's out-of-court statements based on the information provided at the hearing. *See Costa*, 11 S.W.3d at 685 (the trial court's ruling allowing the victim's out-of-court statements "was not clearly against the logic of the circumstances then before the trial court."); *State v. Werneke*, 958 S.W.2d 314, 319 (Mo.App. W.D.1997) (stat-

ing that the fact that the victim's in-court testimony was inconsistent with her out-of-court statements admitted under section 491.075 did not render those statements unreliable or inadmissible). We were unable to find any cases considering admission of statements under section 491.075 that discussed evidence other than that adduced at the hearing, and we believe the only evidence to be considered is that adduced at the hearing. Further, even if K.'s testimony at trial was inconsistent with these statements as Mr. Sprinkle suggests, which suggestion we do not agree with, that does not require exclusion of her out-of-court statements. *Werneke*, 958 S.W.2d at 319. Once those statements are admitted under section 491.075, they are substantive evidence of the truth of the matter asserted. *State v. Benwire*, 98 S.W.3d 618, 623 (Mo.App. W.D.2003). At that point, admissibility is not the issue, but rather whether the trier of fact believes the evidence. The reasons Mr. Sprinkle asserted in the section 491.075 hearing are not sufficient to find an abuse of discretion by the trial court in admitting these statements.

**1. Spontaneity**

■ Mr. Sprinkle claims the comments were not spontaneously made because the first time K. told anyone about the abuse was after she saw the MOCSA presentation. Further, the statements to Ms. Watson were made in a therapeutic setting and those to Ms. Donalin were made in a setting where the sole purpose was to ask K. questions about the abuse. We think, however, that Mr. Sprinkle misunderstands what is meant by spontaneity. The question is not where the statements were

---

4. The trial court held a hearing on this matter, overruled Mr. Sprinkle's objections, and allowed the witnesses to testify. There is, however, no specific finding of reliability in the record. While such a finding is preferred, reliability is implicit when the defendant's objection is overruled and the witnesses are allowed to testify. *State v. Tringl*, 848 S.W.2d 29, 31 (Mo.App. E.D.1993).

made, but rather whether the victim was prompted or pressured to make the disclosures or whether the victim freely volunteered them. *Costa,* 11 S.W.3d at 681–83 (when considering statements made in therapy or an interview, the court was concerned with pressure on the victim to answer the questions when deciding the trustworthiness of the statements, including their spontaneity; statements the victim made without prompting or pressure were spontaneous and statements made after repeated questioning were not spontaneous). It appears to us that all of these statements were sufficiently spontaneous.

The purpose of the MOCSA presentation was to explain to children the difference between appropriate and inappropriate touching and that they should tell an adult if they have been inappropriately touched. Until she attended this program, K. may not have realized that she should tell someone about the abuse. No one specifically asked K. if she had been abused; she spontaneously volunteered this information after learning that what happened to her should be reported. *See State v. Redman,* 916 S.W.2d 787, 792 (Mo. banc 1996) (victim "related the incidents voluntarily, *without prompting*") (emphasis added). There has been no suggestion that after a MOCSA presentation children make false reports of abuse. Mr. Sprinkle's suggestion that children's reports after seeing a MOCSA show should be considered unreliable completely ignores MOCSA's purpose to educate children about sexual abuse. K.'s disclosure to the MOCSA counselor was spontaneous. Although the counselor told K. to tell her mom, the disclosure to her mom was also spontaneous because her mom did not prompt it and there was no evidence of pressure from the MOCSA counselor.

K. attended therapy with Ms. Watson because of her disclosure to her mom, but the fact that she told Ms. Watson about the abuse in therapy does not make the disclosure non-spontaneous. No evidence was presented at the hearing about how the disclosures were made; both parties focused solely on the substance of the disclosures. Because nothing was presented showing that Ms. Watson prompted K. to tell her about the abuse, and there is no evidence of any pressure tactics, determining that K.'s disclosures to Ms. Watson were spontaneous is reasonable. *Cf. Costa,* 11 S.W.3d at 680–83 (finding victim's statements were not spontaneous where interviewer had to repeatedly question victim before she answered and where counselor asked questions several times and use of anatomical dolls "was more of a pressure tactic than an open ended questioning").

 Ms. Donalin interviewed K. because of her allegations of sexual abuse. Whenever there are allegations of sexual abuse the children must be interviewed and statements to a professional interviewer are not unreliable simply because the purpose of the interview is to discuss the abuse. *Cf. Werneke,* 958 S.W.2d at 316, 319 (victim was interviewed by a deputy with special training in interviewing children regarding allegations of sexual abuse and all out-of-court statements were found to be "virtually spontaneous"); *Tringl,* 848 S.W.2d at 31 (interviews by detectives showed no signs of suggestiveness).

At trial, Mr. Sprinkle questioned Ms. Donalin extensively about her interviewing techniques, particularly focusing on whether the questions she asked were leading or were open-ended questions followed by focused ones. After viewing the videotape of the interview, we conclude that Ms. Donalin's questions were open-ended and that her focus questions properly followed up on statements K. had already made. Ms. Donalin did not use leading questions

and did not prompt K. to say certain things. K.'s answers were spontaneous and did not appear coached. Ms. Donalin did not prompt or pressure K. to disclose any specific abuse and did not state any specifics herself until after K. said them. Mr. Sprinkle tried to show prompting based on the couple of times K. said she forgot what happened, suggesting Ms. Donalin led K. to say what happened. But both times that K. said she forgot something, the statement was contained within a larger response and K. always added more information about what happened before Ms. Donalin asked her another question. Considering the articulation capabilities of a nine-year-old child, these responses were natural and spontaneous.

## 2. Consistency

▮ Mr. Sprinkle argues that K.'s statements were inconsistent because she described different aspects of the abuse to each person she spoke with and she added details in each new discussion.[5] But the fact that she added details each time she told the story does not necessarily make her statements inconsistent. K. was only eight or nine years old when she made these statements and "[i]n cases involving such young victims and sensitive and embarrassing subject matters, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." *State v. Mattic*, 84 S.W.3d 161, 169 (Mo.App. W.D. 2002) (internal quotation marks omitted). Missouri courts have held that inconsistencies or contradictions in statements by young children relating to a sexual experience do not, by themselves, deprive the statements of all probative force. *Id.; Werneke*, 958 S.W.2d at 319. There is a

difference between inconsistency and describing different details at different times.

K.'s statements were not inconsistent with each other; she just added details. Although she may have added details in discussing the abuse with adults, as suggested by Mr. Sprinkle, K. may simply have needed more time to become comfortable describing what happened and she may have remembered different things at different times. K. first told her mom only that Mr. Sprinkle abused her. K. told Ms. Watson that she was forced to touch Mr. Sprinkle's penis. She first said he "had her try to get stuff to come out of his thing," and later said he "had some white stuff come out of his thing." But K. never told Ms. Watson that Mr. Sprinkle touched her. K. told Ms. Donalin that Mr. Sprinkle touched her "private parts" and made her touch his "private parts" and that "once this white goo squirted out." K. later also told her mom that Mr. Sprinkle "would rub her private area and he would make her rub his private area." These statements are not inconsistent with each other. They present no conflict at all and some describe the same abuse. K. simply described different details at different times. These additions go to the credibility of her testimony and her statements to the other witnesses, not to the admissibility of those statements, and the jury is left to resolve the issue. *State v. Mason*, 95 S.W.3d 206, 209 (Mo.App. S.D.2003); *cf. State v. Griggs*, 999 S.W.2d 235, 243 (Mo. App. W.D.1998) (stating that the jury may decide non-essential discrepancies are attributable to memory lapses and the articulation difficulties of a six-year-old child, or it may decide they constitute a reason to disbelieve the testimony).

---

**5.** In Mr. Sprinkle's list of distinctions between K.'s statements, he also includes a detail K. first disclosed at trial. But as discussed above, the trial court could only consider the information it had at the hearing, and this court reviews admission of the statements based only on that same information.

Mr. Sprinkle had an opportunity at trial to present evidence through his witnesses demonstrating the susceptibility of children to suggestion, as an alternate explanation for the new details. But that information was not even presented at the hearing for the trial court to consider, and regardless, it does not go to the admissibility of the statements. The jury was free to consider that explanation in deciding the weight to give to all of the State's evidence. *See State v. Garner*, 14 S.W.3d 67, 73 (Mo.App. E.D.1999) (stating that veracity is not required in deciding admissibility, but goes to credibility, which is for the jury to decide); *cf. Brooks v. SSM Health Care*, 73 S.W.3d 686, 698 (Mo.App. S.D. 2002) (holding that once the court determines expert testimony is admissible, credibility of the expert is a question for the jury).

### 3. Demeanor

Mr. Sprinkle does not object to the statements based on K.'s mental state. In light of the evidence at the hearing that she acted upset, embarrassed, angry, and shy when disclosing the abuse, her mental state during each disclosure supports the reliability of her statements.

### 4. Motive to fabricate

■ Mr. Sprinkle also claims K. had a motive to fabricate because of substantial evidence presented that the Sprinkles wanted to adopt K., and, if Ms. Hopkins lost K., she would stop receiving support payments from the state. Further, there was some evidence that Ms. Hopkins and Ms. Sprinkle did not get along. But none of these reasons overwhelmingly suggests a motive to lie, and most were not even

presented at the hearing so they cannot now be considered on review. *See Costa*, 11 S.W.3d at 685 (holding that the trial court's ruling was "not clearly against the logic of the circumstances then before the trial court.").

Although the Sprinkles had discussed adopting K., there is no suggestion that they were trying to get the Department of Family Services to remove K. from the home and Ms. Hopkins said she thought that issue was closed. During the hearing, Mr. Sprinkle only asked Ms. Hopkins if she had received state support for K.; there was no discussion until the trial about losing that support if the Sprinkles adopted K. While Ms. Hopkins may have had some animosity toward the Sprinkles, K. told the story first; Ms. Hopkins did not ask her if Mr. Sprinkle molested her. Further, Mr. Sprinkle did not even broach the subject of Ms. Hopkins' and Ms. Sprinkle's relationship until the trial, so it was not available to be considered by the trial court at the time admissibility of the statements was decided.[6] So the trial court was not presented with any evidence of a motive to lie except the fact that the Sprinkles wanted to adopt K. and Ms. Hopkins opposed that. Even if that was a sufficient motive to lie, K.'s motive to lie is merely one factor for the trial court to consider when deciding on the reliability of the statements. *Tringl*, 848 S.W.2d at 32.

Mr. Sprinkle also suggests that Ms. Hopkins repeatedly discussed these allegations with K., resulting in either K. innocently incorporating Ms. Hopkins' suggestions about the abuse or blatantly incorporating them to hurt Mr. Sprinkle. But Mr. Sprinkle failed to even question Ms. Hopkins during the section 491.075

---

**6.** Mr. Sprinkle addressed this issue extensively at trial, but because the trial court did not have this evidence to consider in deciding admissibility, it was only evidence the jury

could consider in weighing credibility, *Mason*, 95 S.W.3d at 211, and apparently the jury did not find it compelling.

hearing about the number of times she discussed the abuse with K. Therefore, the trial court could not consider the number of times the discussions occurred and so we do not consider it now in deciding if the trial court abused its discretion in admitting the statements. The evidence that Mr. Sprinkle produced at trial about the number of conversations, and K.'s and her mom's denials that they occurred, did not go to admissibility, merely to credibility of the statements. Credibility was a matter for the jury to decide. *Mason*, 95 S.W.3d at 211.

## 5. Knowledge of sexual acts

■ Mr. Sprinkle then claims that K.'s knowledge of these types of sexual acts was not unusual because Ms. Hopkins was sexually molested by her step-father when she was a child, she made similar accusations against him, and there was "undisputed evidence" that she spoke graphically about this experience in front of K. But this evidence was hardly "undisputed" and not presented until trial. Although Mr. Hopkins, Ms. Hopkins' ex-husband, testified for Mr. Sprinkle at trial that Ms. Hopkins graphically discussed her experiences in front of or with K., both K. and Ms. Hopkins testified that no such discussions occurred.

Mr. Sprinkle again appears to be expecting the trial court to make its decision about the admissibility of K.'s out-of-court statements on the basis of information received at trial and not at the hearing. At the hearing Ms. Hopkins was asked if she ever discussed sex with K. and she said "no." Mr. Sprinkle's attorney did not pursue that issue any further. So after the hearing, when the trial court decided the statements were admissible, it had no evidence to suggest that K.'s knowledge of sexual acts came from anywhere except

her own experiences. Because the possibility that K. gained her sexual knowledge from her mom was not presented until trial, whether K. made up the abuse based on things her mother said or whether she gained this knowledge only though her own sexual abuse was a question of credibility for the jury. *Mason*, 95 S.W.3d at 211.

## 6. Lapse of time

■ Mr. Sprinkle finally claims that the lapse of time between the alleged abuse and when K. told her mom about it suggests a lack of reliability. But a nine to eleven month lapse of time between the occurrence of the alleged abuse and the first time K. told anyone is not significant enough to make her statements unreliable. Mr. Sprinkle is correct that there are many cases where the child told someone about the abuse shortly after it happened. *See, e.g., Redman*, 916 S.W.2d at 792 (the child related the incidents shortly after they occurred). But there are also several cases where there was a more significant time lapse between the occurrence of the abuse and the child telling someone. *Tringl*, 848 S.W.2d at 32 ("Defendant's claim that eight months should equate to unreliability is without merit. Time is only one factor for the court to consider when determining reliability."); *Foster*, 854 S.W.2d at 6 (stating that even though the child did not tell until after several months after the incident occurred, the time lapse was merely one factor to consider).

## 7. The statements had sufficient indicia of reliability

Under the totality of circumstances, these statements had sufficient indicia of reliability and the trial court did not abuse its discretion in admitting them. When considered together, K.'s various state-

ments consistently paint a picture of what happened when Mr. Sprinkle abused her. K. was not prompted or pressured to disclose this abuse. She initially volunteered the information and later answered very open-ended questions about the abuse. Although she did not tell each person the exact same story, the stories go together and do not conflict with each other. Based on the information presented at the hearing, the trial court had little reason to believe K. had a motive to lie or opportunity to gain her sexual knowledge from elsewhere. The time lapse is not large enough to cause concern, particularly based on the reliability of the other factors.

Mr. Sprinkle was offered an opportunity to present evidence on the motion to admit these statements and chose not to do anymore than cross-examine the three witnesses. Although he asked some question about the reliability of these statements through that cross-examination, he chose to wait until trial to pursue this in depth. He could have at least informed the trial court of the evidence expected to come out at trial if he wanted the trial court to be responsible for considering that evidence when deciding on the admissibility of the statements. *See Porras,* 84 S.W.3d at 159 (affirming the trial court's conduct at the section 491.075 hearing where defendant was allowed to proffer any objections to the reliability of the testimony, the State responded, and then the trial court explained why the statements were admissible). But even if this evidence had been presented, it all goes to the credibility of the statements, not their admissibility. *See State v. Kriebs,* 978 S.W.2d 460, 464 (Mo.App. S.D.1998) (finding that inconsistencies that appellant complained affected the admissibility of the evidence were really factors for the jury to consider in giving weight and credibility to that evidence); *State v. Winters,* 900 S.W.2d 636, 641 (Mo. App. W.D.1995) (holding that defendant's

arguments about the reliability of certain witnesses goes to the weight of their testimony, not its admissibility).

Taken together and considering all the factors, these statements were sufficiently reliable to indicate their trustworthiness. *See Costa,* 11 S.W.3d at 680–85 (detailed analysis of the victim's out-of-court statements, considering how each one met the various factors and finding that when taken all together and compared with each other the statements were sufficiently reliable that all were admissible, even if alone they did not each meet every factor). The trial court did not abuse its discretion in admitting K.'s out-of-court statements. Point two is denied.

## C. Sufficiency of evidence and the corroboration rule

■■■ Mr. Sprinkle's third point on appeal is that the trial court erred in not granting his motion for acquittal for insufficiency of the evidence. He claims K.'s testimony was contradictory and was uncorroborated by physical or other evidence.

■■■ Generally, in sexual offense cases the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated. *Griggs,* 999 S.W.2d at 241; *Gatewood,* 965 S.W.2d at 856. Corroboration is required, however, when the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances, and common experiences that its validity is doubtful. *State v. Baker,* 23 S.W.3d 702, 709 (Mo.App. E.D.2000). This is the "corroboration rule." *Id.* This rule only applies to inconsistencies in the victim's trial testimony, not to inconsistencies with the victim's out-of-court statements or the testimony of other witnesses. *Gatewood,* 965 S.W.2d at 856. "The discrepancies must amount to gross inconsis-

tencies and contradictions and must relate directly to an essential element of the case." *Id.* (internal quotation marks omitted). Based on these rules, the corroboration rule does not apply here.

Mr. Sprinkle is charged with child molestation by subjecting K. to sexual contact, specifically for "plac[ing] his hand on K.'s vagina" and for having "K. place her hand on [his] penis." The essential element in this case is the sexual contact between Mr. Sprinkle and K. None of the inconsistencies pointed out by Mr. Sprinkle go to the essential element of sexual contact between Mr. Sprinkle and K., which was unambiguously explained in K.'s testimony. *See Baker,* 23 S.W.3d at 709 (stating that discrepancies about facts surrounding when the incidents happened did not relate to an essential element of the case when the victim's trial testimony was unambiguous in detailing the elements of the offense); *Gatewood,* 965 S.W.2d at 857 (stating that the victim's uncertainty about the day of the week on which the alleged rape occurred does not trigger the corroboration rule; she was certain of the date of the rape).

The inconsistencies Mr. Sprinkle relies on from K.'s testimony on direct and cross-examination are about her age when she stayed with the Sprinkles and the length of time she was there. Mr. Sprinkle also notes that in her interview with Ms. Donalin, K. said one of the instances of abuse happened on a Saturday, but she regularly went to her mother's home over the weekends. As stated above, the testimony of young victims about sensitive matters commonly contains some variations, contradictions, or lapses in memory. *Mattic,* 84 S.W.3d at 169. These inconsistencies are merely collateral matters and do not relate to the essential element of sexual contact. Because K. testified that her mom told her she stayed with her aunt and uncle for two

weeks, Mr. Sprinkle claims that demonstrates her mother's influence on her testimony and the pliability of her memory. Although K. was thirteen when she testified, she was seven when the abuse happened and at that age may not have realized how long she stayed with her aunt and uncle. But even if she did determine the length of time she stayed with her aunt and uncle based on what her mom said, that is not an essential element of the sexual abuse. The jury can consider that statement in weighing her credibility. *Mason,* 95 S.W.3d at 211.

The corroboration rule does not apply here. Because no corroboration was required, the evidence was sufficient for a reasonable person to convict Mr. Sprinkle. Point three is denied.

### D. Comments by members of the venire panel during jury selection

Mr. Sprinkle's fourth point on appeal is that the trial court erred when it failed to grant his motion for a mistrial or to quash the venire panel. He claims that members of the venire panel made comments that were so prejudicial that the entire panel was tainted, violating his right to be tried by a fair and impartial jury.

Mr. Sprinkle complains about several statements made by various members of the venire panel during voir dire, claiming they all were prejudicial. He objected to the following statement by Juror Porter:

**Juror Porter:** My ex-son-in-law as a boy was molested by his uncle. And I feel that a whole lot of his problems stem from the fact that this took place.

And the uncle was later fired from a Catholic school for molesting boys.

And I think a whole lot of the problems that he's had, my ex-son-in-law had stemmed from it was over several years that he was molested.

He objected to the following exchange, claiming it sought a commitment from the jurors:

**Ms. Glick (prosecutor):** Is there anyone that's a part of the jury panel that believes that children do not disclose information about what happens to them, because of fear or lack of understanding?

\* \* \*

**Juror Kalcic:** Definitely.

He also objected to the following, again for seeking a commitment:

**Ms. Glick:** Is there anyone in this room that believes that a child in this age range cannot recite an event accurately? And I see one hand.

**Juror Gieringer:** I'm somewhat confused by the question, as I believe we all are. I believe that a child, because of fear or other circumstances might hold an event within themselves for a long time.

\* \* \*

**Juror Pugh:** When they tell an adult, when they are able to, they might forget everything that's happened, every detail ... I'm saying that they'll be honest and they'll tell, tell an adult, but they may forget everything that happened.

### 1. This issue is preserved for appeal

■■■■ The State erroneously claims that Mr. Sprinkle did not preserve this point for review. The State asserts that Mr. Sprinkle waited too long after Juror Porter's statement, waiting until after a recess, to move for a mistrial and so waived that claim. The State claims that Mr. Sprinkle has changed the ground for his objections to the other exchanges, because at trial he objected to the questions and answers as seeking a commitment

from the jurors and he is now claiming they were unsworn, unqualified testimony about the truthfulness of child victims, implicitly validating the State's theory of the case. "An objection offered to the trial court may not be expanded on appeal nor may a litigant rely on a different theory than that advanced at trial." *Foster*, 854 S.W.2d at 5.

■■■■ The State's argument that these objections are not preserved is without merit. The objection to Juror Porter's statements was not unreasonably delayed. Immediately after his comments Mr. Sprinkle's attorney told the trial judge that he was concerned the remarks infected the rest of the jury and said he was not sure what type of relief he was going to request. The judge then called for a recess. Immediately upon returning from that recess, Mr. Sprinkle moved for a mistrial or to quash the panel based on those remarks. The requirement that objections to the jury panel be contemporaneous exists to minimize incentive for sandbagging in hopes of acquittal and then, after an unfavorable verdict, challenging the selection of the jury. *State v. Sumowski*, 794 S.W.2d 643, 647 (Mo. banc 1990). Mr. Sprinkle lodged his motion while voir dire was still going on, so there is no concern he was sandbagging. When Mr. Sprinkle objected to the other questions and responses, he also said the State was trying to get the jurors to commit to the State's version of the facts, which is at least part of the current basis for the objection. Therefore, this objection was preserved and will be reviewed on the merits.

### 2. It was unnecessary to strike the jury panel

■■■■ To justify striking the entire panel, the veniremember's comments must be so inflammatory and prejudicial that it can be said defendant's right to a fair trial

has been infringed. *State v. Evans*, 802 S.W.2d 507, 514 (Mo. banc 1991). The defendant has the burden of showing this prejudice. *State v. States*, 809 S.W.2d 8, 10 (Mo.App. E.D.1991). "Disqualification of an individual juror due to remarks indicating bias or prejudice is generally not a sufficient ground in itself to challenge the entire jury panel." *State v. Jordan*, 947 S.W.2d 95, 96 (Mo.App. W.D.1997).

Mr. Porter's comments do not rise to this level. He simply stated his experience with one person who was molested as a child. He made no suggestion he knew anything about Mr. Sprinkle's guilt. This comment merely made him inappropriate to sit on the jury panel, and he was properly excused for cause. The comments by the other jurors also did not prejudice Mr. Sprinkle. These were clearly statements of individual opinions, and do not suggest any specialized knowledge on the part of the jurors that would lead the other jurors to give the comments any weight. The questions do not suggest an attempt by the State to get a commitment from the jurors and the responses do not suggest any commitment was given.

There are many cases where statements far more inflammatory or prejudicial than those by any of the jurors in this case were not considered grounds to quash the panel or declare a mistrial. *See, e.g., Kelley*, 83 S.W.3d at 42 (finding no abuse of discretion in refusing to grant a mistrial after a venireperson said that he knew about defendant and so could not be impartial); *Thompson*, 985 S.W.2d at 789–90 (holding that the trial court's decision to not quash the venire panel after the prosecutor asked a juror if he already presumed the defendant was guilty was correct because the remarks were not so inflammatory or prejudicial as to require reversal); *Evans*, 802 S.W.2d at 514–15 (stating that venireman's comment that "[e]verybody's got some kind of thoughts, *what he did to this nine year old girl* " was not so inflammatory or prejudicial that it required the jury panel be quashed); *State v. Reed*, 789 S.W.2d 140, 141–42 (Mo.App. S.D.1990) (finding no plain error when the trial court did not strike the jury panel after a venireman said he had known the defendant since birth and that "he might have done it or he might not have done it, but I fell [sic] like he did do it, you know, because of knowing him as well as I do.").

The trial court is in the best position to decide the impact of such comments on the jury. *State v. Weekley*, 92 S.W.3d 327, 330 (Mo.App. S.D.2002). Here, the trial court did not find that the juror's comments and prosecutor's questions required anything other than excusing Juror Porter for cause. The trial court did not abuse its discretion when it did not quash the jury panel or declare a mistrial. Point four is denied.

## IV. CONCLUSION

The trial court did not abuse its discretion in refusing to dismiss the indictment and failing to grant Mr. Sprinkle's motion for a bill of particulars. The trial court also did not abuse its discretion in finding K.'s out-of-court statements had sufficient indicia of reliability and admitting them under section 491.075. There was sufficient evidence to support the jury's verdict and the corroboration rule did not apply. Finally, the trial court did not abuse its discretion in refusing to quash the venire panel or declare a mistrial. The judgment of the trial court is affirmed.

PATRICIA A. BRECKENRIDGE and PAUL M. SPINDEN, JJ., concur.