STATE of Missouri, Respondent,

v.

Marion Frank WADDELL, Appellant.

No. 26212.

Missouri Court of Appeals,
Southern District,
Division Two.

June 14, 2005.

Thomas D. Carver, Springfield, for appellant.

John L. Adamik, Marshfield, for respondent.

ROBERT S. BARNEY, Judge.

Marion Frank Waddell ("Appellant") appeals his conviction following a bench trial for one count of the Class A misdemeanor of child molestation in the second degree, a violation of section 566.068.[1] In pertinent part, the trial court sentenced Appellant to one year in the Webster County jail, suspended execution of the sentence, and placed Appellant on two years supervised probation. Appellant now contests the sufficiency of the evidence to support his conviction.

■ "In a court-tried case the sufficiency of the evidence is determined by the same standard as in a jury-tried case and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt." *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992). " 'Substantial or sufficient evidence is that from which the trier of fact could reasonably find the issue in conformity with the verdict.' " *State v. Bewley,* 68 S.W.3d 613, 617 (Mo.App.2002) (quoting *State v. Pasteur,* 9 S.W.3d 689, 697 (Mo.App.1999)). "In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored." *Sladek,* 835 S.W.2d at 310. " 'Witness credibility is a matter for the trial court, and is not within the province of the appellate court in a court-tried criminal case.' " *Bewley,* 68 S.W.3d at 618 (quoting *State v. Daniels,* 18 S.W.3d 66, 68 (Mo.App.2000)).

The record reveals that in early July of 2001, A.K., who was fifteen years old at the time, visited the home of her friend, H.W., who was thirteen years old.[2] A.K. and H.W. went to Appellant's home to help him perform maintenance on his car.[3] According to A.K., while H.W. was inside of Appellant's car and A.K. was standing "towards the front of the car," Appellant "went over to put his arm around [A.K.] and he touched [her] butt ... [h]e put his whole hand on it and rubbed on it." After

---

**1.** Statutory references are to RSMo 2000, unless otherwise specified.

**2.** We use the initials of the minors involved in order to protect their identity.

**3.** Appellant is H.W.'s grandfather.

Appellant touched her, A.K. moved away from him.

Later, A.K. and H.W. went into Appellant's kitchen to get a glass of water. While the two girls were standing by the sink, Appellant came into the room and began talking to them. After a few minutes of conversation, Appellant "reached over and pulled [A.K.'s] tube top down ... [a]ll the way down to [her] waist" and exposed her breasts. Then Appellant "took the same hand that he pulled the tube top down with and he put his whole hand against [A.K.'s] breast and was feeling it." Appellant made a comment to A.K. that had "something to do with him being curious and not seeing young breasts in a while." A.K., who was "shocked" and "scared," responded by immediately pulling her tube top back up.

Thereafter, A.K. and H.W. went into Appellant's living room and sat on the couch next to each other. Appellant followed them into the living room and sat down in a rocking chair across the room. As they were sitting there, Appellant asked the girls "what kind of noises [they] made when [they] orgasmic [sic], if [they] moaned or screamed or whined or what." A.K. and H.W. told him that the question was inappropriate and that they were not going to answer it. H.W. said that she had to leave and started out of the room. A.K. was scared and remained sitting on the couch. At that time, Appellant moved over to a stool "sitting in front of [A.K.] ... told [her] that he wanted to find out" and "put his hand up [her] skirt" on her upper leg. A.K. then stood up, and "went [to Appellant] as if to give him a hug, patted him on the back, and ran out the

door." A.K. went directly to H.W.'s house and told H.W.'s mother about what had happened.

A couple of weeks later, on July 19, 2001, A.K. was once again at H.W.'s house. On this occasion, A.K. was helping H.W. baby-sit her siblings while H.W.'s parents went to a social event. When H.W.'s parents left home, they told A.K. and H.W. to immediately lock the door behind them. A short time later, Appellant came to H.W.'s house and knocked on the door. Appellant "had a bag of candy, and he said that he was coming over to bring [A.K. and H.W.] candy because [they had] moved a table back over to his house earlier that day when he was gone." Appellant came inside and went into the kitchen where A.K. was doing dishes. He asked A.K. if she was going to give him a hug. A.K. testified she was "scared and didn't know what to do because there was nowhere we could go, so I went over and gave him a loose hug." As she did so, Appellant "locked his arms around [her] and put his hands on [her] butt." H.W.'s little sister, B.W., witnessed Appellant's actions, and went into the back bedroom and called her parents, who returned home.

After being informed of the incident by H.W.'s parents, A.K.'s father contacted the police on July 22, 2001, and charges were subsequently filed against Appellant.[4] As a result of Appellant's actions, A.K. was "scared to be around older men," had to seek counseling, began taking medicine, and was "in and out of the hospital last year due to stress and depression and worry."

---

4. In the amended information, Appellant was charged with one count of child molestation in the second degree under section 566.068 for "touching [A.K.'s] breasts without her consent" on July 8, 2001. Appellant was also charged with assault in the third degree pursuant to section 565.070 for knowingly causing offensive contact to A.K. on July 19, 2001, "by touching her buttocks on the outside of her clothing." This latter charge was dismissed.

A bench trial was held on January 5, 2004. At the close of all the evidence, the trial court convicted Appellant of one count of child molestation in the second degree. This appeal followed.

■ In Appellant's sole point on appeal, he maintains the trial court erred in finding him guilty of child molestation in the second degree because there was insufficient evidence upon which to sustain his conviction. Appellant argues that corroboration of A.K.'s testimony was required due to the "fundamental contradictory and inconsistent nature" of A.K.'s trial testimony and her out-of-court statements. In support of his argument that corroboration of A.K.'s testimony was required, Appellant points to the "inconsistent nature of [A.K.'s] [out-of-court] statements" compared to her trial testimony regarding where the molestation occurred and "the purpose of her trip to [Appellant's] home."

■ As a general rule, "[t]he uncorroborated testimony of the victim in a case of sexual assault is sufficient to sustain a conviction." *Sladek*, 835 S.W.2d at 310. Corroboration is not required unless "the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful." *State v. George*, 921 S.W.2d 638, 643 (Mo.App.1996). " 'The discrepancies must amount to gross inconsistencies and contradictions and must relate directly to an essential element of the case.' " *State v. Sprinkle*, 122 S.W.3d 652, 666 (Mo.App. 2003) (quoting *State v. Gatewood*, 965 S.W.2d 852, 856 (Mo.App.1998)). "Conflict between the testimony of the victim and other witnesses does not require application of the corroboration rule." *Sladek*, 835 S.W.2d at 310. Furthermore, "the corroboration rule ... *does not apply to conflicts between the victim's trial testimony and the victim's out-of-court state-*

*ments.*" *State v. Paxton*, 140 S.W.3d 226, 230 (Mo.App.2004) (emphasis added); *State v. Benwire*, 98 S.W.3d 618, 623 n. 2 (Mo.App.2003). " 'Any contradictions between a witness's trial testimony and any previous testimony or statements are for the ... trier of fact to reconcile and consider when judging the witness's credibility.' " *Paxton*, 140 S.W.3d at 230 (quoting *State v. Helmig*, 924 S.W.2d 562, 565 (Mo. App.1996)).

At trial, A.K. stated that Appellant pulled her top down while they were in the kitchen of his home; however, in her initial statement to the police, A.K. stated that Appellant pulled her top down while they were in the living room of his home. Additionally, in her written statement A.K. stated that Appellant "touched her butt" while they were in the kitchen as opposed to touching her while they were outside by the car as evidenced by her trial testimony. On cross examination, A.K. explained these discrepancies by stating that at the time she made the original written statement for the police "it was hard to put all the facts down on paper" because she "was very upset" and she was told "to just write down whatever [she] could remember." She went on to state she was certain that Appellant pulled her tube top down in the kitchen and "touched her butt" while they were outside by the car, as she had stated at trial.

Further, while A.K. testified at trial that she and H.W. went to Appellant's home to help him fix the brakes on his car, A.K. told the police in her original statement that they had gone to Appellant's house to help him wash his car. A.K. explained at trial that she was sure she and H.W. had gone to Appellant's house to help him fix his brakes and that they "had washed his car ..." on a previous occasion.

■ Here, Appellant's point relied on takes issue solely with the discrepancies in A.K.'s trial testimony and her previous out-of-court statement to police. However, as set out previously, the corroboration rule "does not apply to conflicts between the victim's trial testimony and the victim's out-of-court statements." *Paxton*, 140 S.W.3d at 230. We do not find A.K.'s trial testimony to be so contradictory as to deprive it of all probative force. *See Benwire*, 98 S.W.3d at 623. In this instance, the inconsistencies in A.K.'s statement to police and her trial testimony which related to the location of where the molestation occurred were but collateral matters. "[W]here the victim's statements have been inconsistent in collateral matters, no cloud of doubt is created and no corroboration is necessary." *State v. Griggs*, 999 S.W.2d 235, 242 (Mo.App.1998); *see also State v. Baldwin*, 571 S.W.2d 236, 239 (Mo. banc 1978). Any discrepancies between A.K.'s out-of-court statements and her testimony at trial were matters for the trial court to resolve. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995); *Sladek*, 835 S.W.2d at 310. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BATES, C.J., concur.