STATE of Missouri, Respondent,

v.

Floyd B. HALL, Appellant.

No. 27035.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 29, 2006.

Donald R. Cooley, Springfield, for Appellant.

Don W. Crank, Asst. Prosecuting Atty., Springfield, for Respondent.

ROBERT S. BARNEY, Judge.

Floyd B. Hall ("Appellant") appeals his conviction for driving while intoxicated

("DWI"), a violation of section 577.010.[1] Following a court-tried case, Appellant was sentenced to serve two days in the Greene County Jail, pay a fine in the amount of $350.00, and pay costs in the amount of $103.50. In his sole point on appeal, Appellant maintains there was insufficient evidence to prove he was under the influence of alcohol at the time he operated a vehicle.[2] Specifically, Appellant asserts that just prior to his DWI arrest he was involved in a vehicular accident such that the supposed indicia of intoxication observed by the investigating officer was the result of disorientation from the accident and not in fact evidence of intoxication. Also, Appellant maintains there was a "lack of any evidence relating to the time relationship between the operation of the vehicle and the Officer's arriving at the parking lot and reaching his observational belief on [Appellant's] intoxication at the time he was interviewed." The judgment of the trial court is affirmed.

Viewing the evidence in the light most favorable to the trial court's verdict, *State v. Hammons*, 964 S.W.2d 509, 512 (Mo. App.1998), the record reveals that on June 5, 2004, Bryan Hart ("Hart"), a customer, was pumping gas at the "Fast–N–Friendly" gas station in Springfield, Missouri, located at the corner of Cherry Street and Glenstone Avenue. As he was finishing his business at that location, a truck pulled into the gas station and "[Appellant] got out [of the truck] and looked [at] the vehicle, [and] walked around [it]." Hart testified at trial that Appellant appeared "distraught" and walked around the vehicle several times.

Hart then left the gas station in his own vehicle and, as he drove away from the gas station, he encountered an automobile accident blocking the roadway down the street. Hart pulled over at the scene of the accident and told the police officer that he believed Appellant, who was still at the gas station examining his vehicle, may have been involved in the accident.

Based on Hart's tip, Officer Jason Trusler ("Officer Trusler"), a police officer who is assigned to the "DWI Enforcement Unit" of the Springfield Police Department, was dispatched to interview Appellant at the gas station. Prior to arriving, Officer Trusler had been advised that Appellant "was possibly intoxicated." When he arrived at the gas station, Officer Trusler found Appellant standing next to his vehicle in the parking lot and there was already another police officer on the scene.

Upon approaching Appellant, Officer Trusler "immediately detected a strong odor of an alcoholic beverage coming from [Appellant's] person." Officer Trusler additionally noted Appellant's "speech was slurred, his eyes were bloodshot, and in the back of the truck ... there was a paper sack, had some beer bottles in it." Officer Trusler requested that Appellant perform a series of field sobriety tests and Appellant "partially" complied with the request. Officer Trusler performed the horizontal gaze nystagmus test ("HGN test") on Appellant. According to Officer Trusler, when he began the HGN test Appellant's whole body "was swaying real heavily in a circular motion ..." and "[a]t one point, he actually fell backwards against his vehicle." Officer Trusler then began the HGN test again and "observed all six indicators in [Appellant's] eyes, being the lack of smooth pursuit, and the distinct nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees in both eyes." After the HGN test, Appel-

---

1. All statutory references are to RSMo 2000.

2. We note Appellant does not contest the fact that he operated a motor vehicle prior to his arrest.

lant informed Officer Trusler that "he was done performing tests" and he refused to perform further field sobriety tests. At that point, Officer Trusler placed Appellant into custody; transported him to the jail; informed him of his *Miranda*[3] rights; and then completed all of the necessary paperwork accompanying Appellant's arrest.

Officer Trusler indicated that Appellant "stated that he was driving the vehicle and admitted to drinking two beers and had stated he was drinking Busch bottles in glass bottles, which was the same ones that [the police] found in the back of the pickup." At trial, Officer Trusler reviewed the Implied Consent form he had gone over with Appellant and noted that Appellant refused to consent to a chemical test of his breath at the time of his arrest.[4] Officer Trusler stated that based on his years of experience in which he had performed over 350 DWI arrests, Appellant was "highly intoxicated" at the time of his arrest. Officer Trusler based this conclusion "off the initial speaking with [Appellant], the immediate odor of the alcohol coming from his person, the administering of the HGN [test], the swaying in a circular motion, [and] his slurred speech."

Appellant testified on his own behalf at trial. Appellant admitted that after getting off work on the evening in question, on or about 9:00 p.m., he "had a couple of beers," but he insisted he was not intoxicated. He also admitted to two prior DWI convictions as well as a conviction for driving with excessive blood alcohol content.

Appellant related that at the time of the accident he was driving a large F–350 Ford crew-cab pickup truck belonging to his employer, and he was on his way home from work when the accident occurred. According to Appellant, although he did not remember details of the accident, he remembered "reaching up on the dash for a cigarette ... [t]hen the next thing [he] kn[e]w, there was like a big light or something ... [and] there w[ere] like headlights coming at [him] and [he] heard a couple of horns honking." He also believed that the rear-end collision may have "knocked [him] through the intersection ... because [he] felt like the truck was rolling or something." Appellant stated that after the impact "it took [him] a minute to clear [his] head." Appellant then "went down the road a half a block or so, pulled into [the 'Fast–N–Friendly'] parking lot." He examined the vehicle he was driving and "just kind of sat there because [he] figured the police would be there in a minute." He stated that while he was waiting for the police he felt "a little dizzy and stuff." Appellant also testified he was not immediately aware his vehicle had been hit, but that when he examined his vehicle he discovered he had been rear-ended; that the front seat was bent "all the way back to the back seat;" that the ladder racks on his truck were bent; that one of the toolboxes was bent; and that the bed of the truck had been crumpled.

The trial court entered its judgment of conviction on March 31, 2005, and Appellant was sentenced on May 27, 2005. This appeal followed.

■ "The standard of review in a court-tried criminal case is the same as for a jury-tried criminal case." *Hammons*, 964 S.W.2d at 511. "We review the record to see whether sufficient evidence exists from

---

**3.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** We note that neither the Alcohol Influence Report and the Implied Consent form nor any

of Officer Trusler's other documentation were admitted into evidence at trial and, thus, were not included in the record on appeal.

which the trial court could have returned a guilty verdict." Id. at 511–12. In applying the standard, we do not determine the credibility of the witnesses. *State v. Williams,* 18 S.W.3d 425, 427 (Mo.App. 2000). "The State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime." *State v. Howell,* 143 S.W.3d 747, 752 (Mo.App.2004); *see State v. Eppenauer,* 957 S.W.2d 501, 503 (Mo.App.1997). This Court accepts as true all evidence favorable to the verdict and disregards all evidence and inferences to the contrary. *Hammons,* 964 S.W.2d at 512.

■ In his sole point on appeal, Appellant challenges the trial court's finding that he was intoxicated at the time he was driving. First, Appellant argues there was insufficient evidence to prove his behavior after the accident was due to intoxication and not due to trauma from the accident. Appellant directs us to Officer Trusler's cross-examination testimony in which the officer testified he was unsure what types of behavioral and neurological problems might be exhibited by someone who had recently been involved in an accident as opposed to someone who was intoxicated.

■ Section 577.010 sets out in pertinent part that "[a] person commits the crime of [DWI] if he operates a motor vehicle while in an intoxicated or drugged condition." "[A] person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." § 577.001.2. " 'Intoxication' is a 'physical condition' usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes.' " *State v. Teaster,* 962 S.W.2d 429, 431 (Mo.App.1998) (quoting *State v. Ruark,* 720 S.W.2d 453, 454 (Mo. App.1986)). As such, "[i]ntoxication may

be proven by any witness who had a reasonable opportunity to observe the defendant's physical condition, and intoxication is usually evidenced by unsteadiness on the feet, slurred speech, lack of body coordination and impaired motor reflexes." *State v. Scholl,* 114 S.W.3d 304, 307 (Mo. App.2003). "When properly qualified by professional background and experience, a law enforcement officer who has had sufficient opportunity to observe the accused may testify as an expert witness." *Teaster,* 962 S.W.2d at 431. "The State is not required to produce results of a chemical test to prove intoxication." *State v. Wiggins,* 841 S.W.2d 752, 753 (Mo.App.1992). It has long been held that "[c]ircumstantial evidence may prove the elements of the offense, [DWI]." *Eppenauer,* 957 S.W.2d at 503.

In the present matter, Officer Trusler testified he detected a strong odor of intoxicants emanating from Appellant's person; that Appellant's speech was slurred; that his whole body was swaying in a circular motion; that his eyes were bloodshot; that he failed the HGN test; that Appellant fell over during the HGN test; that there were empty beer bottles in Appellant's vehicle; and that Appellant admitted to drinking that evening. *See State v. England,* 92 S.W.3d 335, 342 (Mo.App. 2002) (holding that "[b]loodshot and watery eyes, slurred speech, and the smell of alcohol on one's breath are indicia of intoxication"); *Norris v. Dir. of Revenue,* 156 S.W.3d 786, 788 (Mo.App.2005) (holding that indicia of intoxication include defendant's swaying, poor balance, slow and slurred speech and strong odor of intoxicants on defendant's breath). Further, Appellant refused to fully perform the requested sobriety tests. *See State v. Myers,* 940 S.W.2d 64, 65 (Mo.App.1997) (holding that a refusal to perform field

sobriety tests "was admissible as evidence of intoxication").

Additionally, Officer Trusler testified at length regarding his qualifications, certifications, and training to conduct field sobriety tests as well as his extensive history of DWI arrests. Officer Trusler related some of the symptoms exhibited by Appellant could have been consistent with someone who had just been in an accident, but he pointed out that Appellant also suffered from "the odor, the slurred speech, the swaying, [the failure of the] HGN [test]"—all of which are indicia of intoxication as indicated above. When asked how he could tell the difference between someone who was intoxicated and someone who is disoriented due to an accident, Officer Trusler replied, "You go back and look at the odor [of intoxicants] and the speech and then you go on with the more in-depth investigation from there." Officer Trusler testified that he did observe the damage to Appellant's vehicle from the accident, but he had not visited the actual accident scene and did not know the extent of the accident. Officer Trusler related he "asked [Appellant] if he struck his head at any time, and [Appellant] said he didn't think so." Further, Officer Trusler stated "[t]here wasn't any indication[ ] inside the vehicle up on the windshield that he had hit his head … the windshield wasn't broken … [t]here was no head impact that's generally associated with that on the windshield" and related that Appellant's pupils were of equal size. He also stated that Appellant did not ask for medical assistance following the accident. These foregoing observations, coupled with the earlier indicia of intoxication observed by Officer Trusler, are sufficient to establish that Appellant was intoxicated. *See State v. Cross,* 34 S.W.3d 175, 177–78, 184 (Mo.

App.2000), *overruled on other grounds by Cox v. Dir. of Revenue,* 98 S.W.3d 548, 551 (Mo.2003).

 "Witness testimony is for a trial court to consider as the trier of fact." *State v. Lauer,* 955 S.W.2d 23, 25 (Mo.App. 1997). It is the trial court's prerogative to decide whether to believe all, part or none of a witness's testimony. Id. In the present matter, the trial court found the testimony of Officer Trusler was credible and that Officer Trusler observed sufficient indicia of intoxication to prove Appellant was guilty of driving a vehicle in an intoxicated state.

Second, Appellant also argues that "[e]ven if there were some basis to find [he] was intoxicated … there is absolutely no evidence to support a finding beyond a reasonable doubt that he was intoxicated when he operated a motor vehicle." In support of this argument Appellant maintains:

> Officer Trusler never saw [him] operate the vehicle and was never at the scene of the accident where [he] was rear ended. No evidence was presented by the State as to the time of the accident, the time [Appellant] drove his vehicle to the parking lot and exited the vehicle, or the time Officer Trusler arrived at the parking lot and talked to [Appellant].

Appellant goes on to argue there was "no evidence presented by the State as to when the consumption of alcohol occurred, and most importantly, whether it occurred after [Appellant] parked his car in the ['Fast–N–Friendly'] parking lot."

In our analysis of Appellant's argument we discern that Appellant appears to allude to the exculpatory proviso found in section 577.039 relating to warrantless arrests arising from violations of sections 577.010 and 577.020.[5]

**5.** Section 577.039 states: An arrest without a warrant by a law en-

██ As previously related, a police officer may have reasonable grounds to arrest a person for driving while intoxicated even when the evidence is based on circumstantial evidence.[6] *Eppenauer*, 957 S.W.2d at 503. "Additionally, 'circumstantial evidence can supply the "driving" and "while" elements when *driving is not observed* ...'" at the time a defendant is interviewed by a police officer. *State v. Neal*, 979 S.W.2d 223, 225 (Mo.App.1998) (quoting *Wilcox v. Dir. of Revenue*, 842 S.W.2d 240, 242–43 (Mo.App.1992)).

Here, the record reveals Appellant admitted he was involved in a vehicular accident after which he pulled his vehicle into a gas station parking lot approximately one block down the road from the scene of the accident. Hart, a witness at the gas station, observed Appellant examining his vehicle. When Hart left the gas station moments later, he encountered an accident blocking the roadway just down the street from the gas station. Hart alerted the police that Appellant was at the gas station and an officer was dispatched to interview Appellant. After interviewing Appellant, the investigating officer requested an officer from the DWI unit be

dispatched to the "Fast–N–Friendly" gas station and Officer Trusler arrived to interview Appellant. Based on Officer Trusler's observation of various indicia of intoxication, Appellant was then arrested for DWI.

██ Admittedly, the record in this matter contains scant evidence of an exact timeline in which the aforementioned events occurred.[7] However, that "the warrantless arrest of [Appellant] was or was not within one and one-half hours of the violation does not bear on the criminality of the conduct alleged against him or involve a matter of excuse or justification of that conduct. It bears only on the lawfulness of the arrest for that conduct." *State v. Litterell*, 800 S.W.2d 7, 12–13 (Mo.App. 1990). "The burden to prove that the arrest was made more than one and one-half hours after the claimed violation occurred was [Appellant's], not the State's." *Eppenauer*, 957 S.W.2d at 504. Here, Appellant "did not introduce evidence of the time he last drove his vehicle or the time of arrest." Id. "[T]here was no evidence of the hour when [Appellant's vehicle] ceased operation on the highway, and hence no basis in fact for exculpation un-

forcement officer, including a uniformed member of the state highway patrol, for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer and when such arrest without warrant is made within one and one-half hours after such claimed violation occurred, *unless the person to be arrested has left the scene of an accident or has been removed from the scene to receive medical treatment, in which case such arrest without warrant may be made more than one and one-half hours after such violation occurred.*
(Emphasis added.)

6. " 'Circumstantial evidence means evidence that does not directly prove a fact in issue but

gives rise to a logical inference that the fact exists.' " *State v. Mayfield*, 83 S.W.3d 103, 107 (Mo.App.2002) (quoting *Heskett v. Dir. of Revenue*, 62 S.W.3d 103, 106 (Mo.App.2001)).

7. It has been our experience that law enforcement officers typically and routinely record the times various events occur during an investigation. These events include, among others, the receipt of an emergency call reporting an accident, the investigating officer's arrival on the accident scene, an officer's first contact with a suspect, and the booking of an arrestee into the jail. Evidence of the timing of such events, or any other relevant events in this case, in order to establish a definite timeline, was not offered into evidence by the State in this case. This appears to be a prosecutorial flaw which is easily remedied and should not be repeated in future cases.

der the proviso" set out in section 577.039. *Litterell,* 800 S.W.2d at 13. It was Appellant's burden to introduce evidence that his arrest occurred more than one and one-half hours of the claimed violation. *Id.; Eppenauer,* 957 S.W.2d at 504. This he did not do.

In our review of the record it appears the events detailed above happened in quick succession. In fact, Appellant himself never called the police; instead, he pulled over at the gas station because he "figured the police would be there in a minute," and he did not mention at trial having to wait for police assistance. Further, there was an officer with Appellant prior to Officer Trusler's arrival, and there is nothing in the record to suggest Appellant was unattended such that his intoxication could have "occurred after [Appellant] parked his car in the ['Fast–N–Friendly'] parking lot." In either event, "[i]t was not the State's duty to show an 'absolute impossibility of innocence.'" *Hammons,* 964 S.W.2d at 513 (quoting *Taylor v. McNeill,* 714 S.W.2d 947, 949 (Mo.App.1986)). Further, Officer Trusler testified that Appellant told him at the scene that he had stopped drinking "when he got struck in the rear-end" at the time of the accident. Accordingly, it can be inferred by Appellant's own testimony that any intoxication Appellant may have been suffering from occurred prior to the accident in question. With that being said, the significant indicia of intoxication observed by Officer Trusler and the time-related evidence found in the record, support an inference that Appellant was, indeed, legally intoxicated at the time he was driving the vehicle. *See Eppenauer,* 957 S.W.2d at 503. There was sufficient evidence to support the trial court's judgment. Point denied.

The judgment of the trial court is affirmed.

GARRISON and LYNCH, JJ., concurs.