**STATE of Missouri, Respondent,**

v.

**Leroy "Sonny" E. PAULSON,
Appellant.**

No. 27633.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 23, 2007.

Motion for Rehearing or Transfer
Denied March 19, 2007.

830

Nancy A. McKerrow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Dora A. Fichter, Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Leroy E. Paulson ("Appellant") was convicted following a bench trial of one count of statutory rape, a violation of section 566.032, and one count of statutory sodomy, a violation of section 566.062.[1] Appellant was sentenced to thirty years in the Missouri Department of Corrections on each count with the sentences to run concurrently.

Viewing the evidence in a light most favorable to the trial court's verdict, *State v. Bewley,* 68 S.W.3d 613, 615 (Mo.App. 2002), the record reveals that E.M., who was twelve years old at the time of trial, had resided in a home in Highlandville, Missouri, with K.M. ("Mother") and her three older brothers since 1998.[2] E.M. testified at trial that Appellant began touching her "wrongfully" when she was about four years old. E.M. testified that

---

1. All statutory references are to RSMo (2000).

2. Appellant, who was Mother's boyfriend, had resided in the home for a number of years, but Mother "kicked [him] out for using drugs" in the fall of 2002.

while Mother was at work in the evening Appellant would force her to engage in sexual acts. E.M. testified that Appellant "would touch [her] on [her] vagina [under her clothes with his fingers and the palm of his hand], and he'd make [her] touch him;" Appellant would "rub [her] chest" with his hand under her clothing; Appellant would insert his fingers inside her vagina; Appellant made her touch his penis "and he'd stick it inside [her] vagina;" Appellant would ejaculate inside and outside of her vagina; Appellant put his penis inside her "butt hole;" and "pretty often" Appellant made her "rub" his penis until he ejaculated. E.M. testified that on one occasion Appellant made her "stick [a penis-shaped dildo] in his butt." E.M. also testified that Appellant "made [her] lick [his ejaculate] off of [her] hands . . . ." She testified that on two occasions Appellant made her "suck on" his penis and when she tried to stop "[h]e'd hit [her] or yell at [her] or force [her] to do it." She stated she felt what he made her do "was nasty."

E.M. also testified that Appellant told her what he was doing to her was " 'a good thing, and everybody is doing it, and if [she] didn't do it, [she would] be an outcast and a bad person.' " She related he told her she was already "bad" and that she could not tell anybody about what he was doing to her or he would kill her and her family. According to E.M., Appellant also told her that if she "wasn't acting like such a slut that he wouldn't have done it and if [she] wasn't such a bad girl that he wouldn't do it . . . ." Likewise, Appellant told her she "was infected now, and if [she] told anybody it'd . . . kill [her], the disease." She stated he would often hit her if she refused his advances and he would tell her she was a "bad" and "naughty" girl.

Appellant also told her "[t]his is fun for me. It should be fun for you," and that "[i]t's an okay thing. It's fun."

Additionally, E.M. testified Appellant put needles in her hands and he injected her with substances that made her "feel dizzy and sick and very tired." She stated Appellant made her smoke cigarettes "[a]nd one time he had a metal pipe, and he put something in there." She also related that "[w]hen [Appellant] first started making [her] smoke cigarettes, [she] felt dizzy and sick. And then the one time he made [her] smoke [from the metal pipe], [she didn't] even know what it was, [she] felt sick to [her] stomach. [She] felt dizzy, lightheaded, and tired." She stated that oftentimes when she smoked she saw "odd shapes." E.M. also testified Appellant made her feel "[n]asty and violated and wrong;" "unwanted;" and "dirty." She stated she felt this way because she "didn't want it, and he made [her] do it."

Appellant offered the following evidence at trial. Angela Bounds ("Ms. Bounds"), E.M.'s former school counselor, testified that in November of 2002 E.M. informed Ms. Bounds that in addition to being sexually abused by Appellant she was sexually abused by seven other men. Micki Lane ("Ms. Lane"), a child forensic examiner at the Child Advocacy Center ("the CAC"), testified she interviewed E.M. on videotape on November 27, 2002.[3] Ms. Lane stated that when she asked E.M. to identify certain body parts on an anatomical drawing of a male, E.M. drew a tongue and labeled it in her own handwriting. Ms. Lane also testified that in addition to Appellant, E.M. informed her of having been sexually abused by nine other males of varying ages.

---

**3.** The trial court ruled the videotape of the CAC interview could not be used in the State's case-in-chief because it lacked "suffi-cient indicia of reliability;" however, the trial court permitted the videotape to be used by Appellant for impeachment purposes.

Mother testified she first learned of E.M.'s allegations against Appellant after E.M. discussed the abuse with Ms. Bounds at school. She stated E.M. had previously informed her "the old man that lived across the street" had touched her inappropriately, but Mother stated that E.M. had never before mentioned Appellant having touched her in an inappropriate manner. Mother also testified that E.M. seemed to have a "good, very good" reputation for telling the truth.

Cheryl Gamache ("Ms. Gamache"), a social worker in Christian County, Missouri, testified that she first came in contact with E.M. following E.M.'s disclosure to Ms. Bounds. She testified that she went to the school with Deputy Orville Choate ("Deputy Choate") of the Christian County Sheriff's Department. Ms. Gamache said that during her interview of E.M., E.M. made sexual allegations against "approximately five" people, including Appellant. After talking with E.M. at school, Ms. Gamache and Deputy Choate interviewed Mother. Ms. Gamache stated Mother told her E.M. "watches television and comes up with stories" and "had been kicked out of two Sunday school classes for telling stories and manipulation." She stated Mother "said [E.M.] is very unusual, difficult, and especially challenging."

Deputy Choate testified that during the initial interview conducted with Ms. Gamache at E.M.'s school E.M. made sexual allegations against "approximately eight" people, including Appellant.[4] He related that Mother had told him that E.M. "was prone to embellish."

As already set out, at the close of all the evidence, the trial court found Appellant guilty of statutory sodomy and statutory rape. He was sentenced to thirty years in the Missouri Department of Corrections on each count with the sentences to run concurrently. This appeal by Appellant followed.

In his first point on appeal Appellant asserts the trial court erred in denying his motion for judgment of acquittal for both statutory rape and statutory sodomy "because there was insufficient evidence to prove Appellant's guilt beyond a reasonable doubt...." Appellant argues that based on the corroboration rule, E.M.'s "testimony was so contradictory and against reason and common sense that it could not be relied on without corroboration."

■ " 'The standard of review in a court-tried criminal case is the same as for a jury-tried criminal case.' " *State v. Hall,* 201 S.W.3d 599, 602 (Mo.App.2006) (quoting *State v. Hammons,* 964 S.W.2d 509, 511 (Mo.App.1998)). " 'In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact might have found the defendant guilty beyond a reasonable doubt.' " *Bewley,* 68 S.W.3d at 617 (quoting *State v. Pasteur,* 9 S.W.3d 689, 697 (Mo.App.1999)). " 'Substantial or sufficient evidence is that from which the trier of fact could reasonably find the issue in conformity with the verdict.' " *Bewley,* 68 S.W.3d at 617 (quoting *Pasteur,* 9 S.W.3d at 697). This Court accepts as true all evidence tending to prove guilt along with all reasonable inferences that support the guilty finding while all contrary evidence and inferences are disregarded. *Hall,* 201 S.W.3d at 603. In applying the standard of review, this Court does not determine the credibility of the witnesses. *State v. Daniels,* 18 S.W.3d 66, 68 (Mo.App.2000).

---

4. At trial, E.M. stated she did not remember telling Ms. Bounds, Ms. Gamache, Ms. Lane and Deputy Choate that she had been abused by numerous people.

It has long been held that " '[t]he uncorroborated testimony of the victim in a case of sexual assault is sufficient to sustain a conviction.' " *State v. Waddell*, 164 S.W.3d 550, 553 (Mo.App.2005) (quoting *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992)); *see State v. Sprinkle*, 122 S.W.3d 652, 666 (Mo.App.2003) (holding that in sexual offense cases "the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated").

■■■ "Corroboration is not required unless 'the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful.' " *Waddell*, 164 S.W.3d at 553 (quoting *State v. George*, 921 S.W.2d 638, 643 (Mo.App.1996)). " 'The discrepancies must amount to gross inconsistencies and contradictions and must relate directly to an essential element of the case.' " *Waddell*, 164 S.W.3d at 553 (quoting *Sprinkle*, 122 S.W.3d at 666). "Furthermore, the corroboration rule is not triggered by inconsistencies between the victim's testimony and the testimony of other witnesses." *State v. Paxton*, 140 S.W.3d 226, 231 (Mo.App.2004). As in the destructive contradictions doctrine, the corroboration rule has no application " 'to contradictions between the victim's trial testimony and prior out-of-court statements, to contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive.' " *State v. Cole*, 148 S.W.3d 896, 902 (Mo.App.2004) (quoting *State v. Wright*, 998 S.W.2d 78, 81 (Mo.App.1999)).

■■ Here, Appellant asserts E.M.'s "statements at trial, and to [Ms. Bounds], [Ms. Gamache], [Deputy Choate], [Mother], and [Ms. Lane] contain so many inconsistencies that this Court should find that corroboration is required to sustain Appellant's convictions." However, the inconsis-

tencies set out by Appellant relate to E.M.'s out-of-court statements, as recited at trial by Appellant's witnesses, that she had been abused by other people *in addition* to Appellant, which is contrary to her trial testimony that only Appellant had abused her. "Conflict between the testimony of the victim and other witnesses does not require application of the corroboration rule." *Sladek*, 835 S.W.2d at 310; *see Waddell*, 164 S.W.3d at 553.

■■ The majority of the inconsistency between E.M.'s trial testimony, her prior out-of-court statements, and the testimony of other witnesses relates to the collateral issue of whether she was abused by other people in addition to Appellant. However, any other sexual abuse which might have occurred at the hands of someone other than Appellant did not *per se* " 'relate directly to an essential element of the case' " against Appellant. *Sprinkle*, 122 S.W.3d at 667 (quoting *State v. Gatewood*, 965 S.W.2d 852, 856 (Mo.App.1998)). " 'Where the victim's statements have been inconsistent in collateral matters, no cloud of doubt is created and no corroboration is necessary.' " *Waddell*, 164 S.W.3d at 554 (quoting *State v. Griggs*, 999 S.W.2d 235, 242 (Mo.App.1998)); *see State v. Baldwin*, 571 S.W.2d 236, 239 (Mo. banc 1978). Any " 'contradictions between a witness's trial testimony and any previous testimony or statements are for the trier of fact to reconcile and consider when judging the witness's credibility.' " *Waddell*, 164 S.W.3d at 553 (quoting *Paxton*, 140 S.W.3d at 230).

Furthermore, the primary inconsistency between E.M.'s trial testimony and her out-of-court statements which related to the crime of sodomy was the fact that at the section 491.075 hearing E.M. testified no one had ever touched her breasts, and at trial she stated Appellant *had* touched her breasts. Throughout this matter E.M.

consistently reported Appellant had sexually abused her and her recitation of the facts changed only as to the amount of detail in her accounts of the incidents with Appellant. As set out in *Sprinkle,* 122 S.W.3d at 667, "the testimony of young victims about sensitive matters commonly contains some variations, contradictions, or lapses in memory."

■ Section 566.032.1 sets out that "[a] person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." Section 566.010(4) defines sexual intercourse as "any penetration, however slight, of the female sex organ, whether or not an emission results."

E.M. testified at trial that during an approximate two year period of time Appellant would often "stick [his penis] inside [her] vagina." Further, she testified that Appellant would ejaculate inside and outside of her vagina.[5] Based on the foregoing there existed sufficient evidence from which the trial court could have found Appellant guilty beyond a reasonable doubt of the crime of statutory rape, as proscribed in section 566.032.1.

■ As for Appellant's conviction for statutory sodomy, section 566.062.1 sets out that "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." "Deviate sexual intercourse" is defined in section 566.010(1) as

any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

E.M. testified at trial that Appellant "would touch [her] on [her] vagina ..." with his fingers and the palm of his hand; Appellant would insert his fingers inside her vagina; Appellant would ejaculate outside of her vagina; Appellant put his penis inside her "butt hole;" "pretty often" Appellant made her "rub" his penis until he ejaculated; and Appellant made her "suck on" his penis.[6] Based on the foregoing, there was sufficient evidence upon which the trial court could have found Appellant guilty beyond a reasonable doubt of statutory sodomy per section 566.062.1. Appellant's Point One is denied.

■ Appellant's second point relied on asserts "[t]he trial court erred in finding Appellant 'guilty beyond a reasonable doubt as charged' because such a finding is ambiguous and fails to protect Appellant from double jeopardy...." Specifically, he argues that because the trial court failed to state which particular act or events it considered in finding Appellant guilty beyond a reasonable doubt of the crime of statutory sodomy, the trial court's verdict left Appellant open for future prosecution for the same acts or events.[7]

---

5. E.M. also told Ms. Lane at the CAC interview that Appellant put his penis inside her vagina "a lot."

6. E.M. told Ms. Lane at the CAC interview that Appellant touched the inside and outside of her vagina with his hands, fingers, and tongue; Appellant forced her to touch his penis with her hands and mouth; Appellant stuck his penis and fingers "in the hole" in

her buttocks on three occasions; Appellant put his penis inside her vagina; and Appellant would "make [her] drink ..." the "white little gummy stuff" that came out of his penis.

7. We note that as in *State v. Rutherford,* 967 S.W.2d 679, 682 n. 3 (Mo.App.1998), Appellant requests this Court remand this matter to the trial court for a detailed statement from the trial court specifying the particular con-

Appellant concedes that he did not properly preserve this point for appellate review and, therefore, requests plain error review under Rule 30.20.[8] Plain error review is used sparingly and is limited to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice. *See State v. Ballard,* 6 S.W.3d 210, 214 (Mo.App.1999). Claims of plain error are reviewed "under a two-prong standard." *State v. Roper,* 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Id.* "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

In support of his assertion that we should review this point for plain error, Appellant cites to *State v. Lue,* 594 S.W.2d 351, 354 (Mo.App.1980). In *Lue,* a jury-tried case, although "it was not intended to charge defendant with two offenses ... the information and the instructions potentially support[ed] two offenses." *Id.* The jury's "verdict merely found the defendant 'guilty.'" *Id.* at 353. Accordingly, there was "confusion ... because it [wa]s not

clear of what crime defendant ha[d] been convicted." *Id.* The appellate court found the charging information was defective, although the issue was not specifically raised by the defendant in his points relied on and granted plain error review. *Id.* at 353–54. The *Lue* court determined that a "verdict must be sufficiently definite and certain so that upon the entry of a judgment thereon it would constitute a bar to a further prosecution for the same offense" and that the verdict in *Lue* was "ambiguous." *Lue,* 594 S.W.2d at 354. The court remanded the case to the trial court and ordered that "[o]n a retrial, the information should be amended by identifying the section under which defendant is being charged, and the instructions and form of verdict should be redrafted so as to clearly specify that offense." *Id.*

The situation in the present matter is not the least bit similar to that found in *Lue.* In the instant matter, Appellant was charged with two crimes and the trial court convicted him of two crimes. This Court fails to see how a verdict in that situation can be ambiguous as Appellant maintains.

Furthermore, as relates to the charging information for statutory sodomy, Count II set out that "on or between the 1st of October, 1998, and the 30th day of November, 2000, in the County of Christian, State of Missouri, [Appellant] had deviate sexual intercourse with E.M., who was less than twelve years old." Evidence

---

duct it considered in rendering its verdict; however, Appellant fails to cite any authority for such an action by this Court. "'We are not required to review points or arguments when they appear without citation of applicable authority.'" *State v. Thompson,* 147 S.W.3d 150, 163 (Mo.App.2004) (quoting *State v. Conaway,* 912 S.W.2d 92, 95 (Mo.App. 1995)). "When no authority is cited and no

explanation is otherwise given for its absence, a point relied on is deemed waived or abandoned." *Id.* Accordingly, we do not address this portion of Appellant's second point relied on.

8. All rule references are to Missouri Court Rules (2006).

was adduced at trial that between those dates Appellant continually sodomized E.M.[9] It is our view that the charging information was not defective in that it listed the statutory section under which Appellant was charged and set out sufficient allegations to charge him with the crime of statutory sodomy. We also observe that this matter was tried before the trial court and not a jury, such that there could be a minimal likelihood of confusion regarding jury instructions or the offenses for which he was convicted.

Further, we note Appellant and his counsel were present at the time the verdict was rendered in open court and at the sentencing hearing. Appellant had every opportunity to ask the trial court for clarification of the verdict at either of the aforementioned court appearances and he failed to do so. *See State v. Wolfe*, 103 S.W.3d 915, 917–18 (Mo.App.2003) (holding there was no manifest injustice where the trial court entered a docket entry of guilty as opposed to announcing the verdict in open court because the defendant was present at sentencing and "[t]he trial court told the defendant of its verdict and gave him an opportunity to ask any questions or make any objections").

Appellant has failed to prove the trial court committed " 'error that is 'evident, obvious, and clear.' " *Roper*, 136 S.W.3d at 900 (quoting *Scurlock*, 998 S.W.2d at 586). Accordingly, we deny plain error review. Point Two is denied.

9. *See State v. Rudd*, 759 S.W.2d 625, 627–28 (Mo.App.1988) (holding that the appellant was not subjected to double jeopardy in his conviction for rape where the information stated the charged offenses occurred over a substantial period of time and "the evidence reflect[ed] a continuing series of acts rather than ... isolated and distinct occurrences"); *State v. Burch*, 740 S.W.2d 293, 296 (Mo.App. 1987) (holding that where "[t]he evidence ...

The judgment and sentence of the trial court is affirmed.

BATES, C.J., and LYNCH, J., concur.

showed a course of sexual abuse of the victim by defendant continuing over a period of months" and that "time is not essential to the crime of sodomy, and in recognition of the impossibility of ascertaining specific dates in cases of sexual abuse of children, especially where there is a continuous series of abusive acts" there was no violation of the defendant's double jeopardy rights).