IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2018 Session

## GRETELLE BRASHELL INGRAM v. JOEY EVI INGRAM

**Appeal from the Chancery Court for Madison County**
No. 72673     James F. Butler, Chancellor

_____

**No. W2017-00640-COA-R3-CV**

_____

In this divorce case, the trial court awarded Wife alimony in futuro and partial attorney's fees as alimony in solido. The trial court additionally awarded Wife the marital home despite the fact that Wife was unable to refinance the home to remove Husband from the mortgage. Discerning no error, we affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

David W. Camp and Alexander D. Camp, Jackson Tennessee, for the appellant, Joey Evi Ingram.

Sara E. Barnett and Charles H. Barnett, III, Jackson, Tennessee, for the appellee, Gretelle Brashell Ingram.

## OPINION

Facts

Joey Evi Ingram ("Husband") and Gretelle Brashell Ingram ("Wife") were married on June 2, 1990 and divorced on October 17, 2017. Husband and Wife separated in January 2015. The couple had no children during their twenty-six year marriage. At the time of the divorce, Wife was sixty years old and Husband was fifty-nine.

Both parties were employed for the majority of the marriage, and on occasion, Husband and Wife each worked two jobs. Wife had three years of college education. In

2007, Wife was in a car accident leaving her with disabling back and neck injuries. Wife was unemployed at the time of the divorce due to the injuries resulting from the collision; however, she was receiving a small pension, social security disability benefits, and an income from rental properties. On the other hand, Husband was employed full-time at Durobag and part-time at DoubleTree Hotel.

The parties also owned several pieces of real estate at the time of the divorce: a marital residence, three rental houses, and a tract of unimproved land. In addition, Husband and Wife each owned one separate rental house. Prior to the parties' divorce, one of their rental properties was destroyed in a fire. Wife received the insurance proceeds, paid off the balance of the loan and taxes, and retained the remainder of the money as funds to live on.

In September, 2014, Husband placed a manila folder on the parties' kitchen counter, which contained a Property Settlement for Wife to review indicating that Husband wanted a divorce. Wife later testified that she believed their marriage was a good one until this incident occurred. Wife also stated that she did not know of a precipitating event that would have caused Husband to ask for a divorce, with the exception that Wife knew that Husband was communicating with someone on Facebook.

Eventually, Wife filed a complaint for absolute divorce on January 15, 2015. Husband later answered and filed a counter-complaint. After unsuccessful mediation, the matter finally came to trial on April 5 and 25, 2016. At trial, Husband and Wife were the only two witnesses in the case, and some of the testimony was highly disputed.

The trial court took the matter under advisement and issued a thorough written letter ruling on September 16, 2016. Ultimately, the trial court divided the marital property almost equally. Most notably, however, the trial court awarded the marital residence to Wife, requiring her to pay the substantial mortgage. The trial court also found that Wife's expenses of $4,216.00 per month were reasonable. The trial court found, however, that Wife's income, which included Wife's pension, social security disability, and income from rental properties, totaled only $2,741.00 per month. In contrast, the trial court found that Husband's expenses were $2,718.00 per month with a net income of $3,861.00 per month. Accordingly, the trial court awarded Wife alimony in futuro in the amount of $800.00 per month. The trial court issued its final judgment of absolute divorce on October 17, 2016.

On November 14, 2016, Wife filed a motion for contempt due to Husband's alleged noncompliance with the October 17 final order. Husband responded on November 16 stating that he was unable to pay alimony payments because he was still making mortgage payments on the marital residence, and that Wife had not attempted to refinance the home loan or make any of the mortgage payments. On the same day, Husband filed a motion to alter or amend the trial court's award of attorney's fees and

alimony in futuro and to order Wife to refinance the debt owed on the marital home, or in the alternative, to force a sale of the property to satisfy the debt owed. On March 1, 2017, the trial court denied in part Husband's motion to modify the alimony and attorney's fees awards; however, the trial court granted in part Husband's request that Wife reasonably attempt to refinance the marital home. The trial court therefore ordered Wife to provide Husband with documentation from three banks or mortgage companies of her attempts to refinance. Wife provided documentation of her attempts to refinance, as ordered by the trial court, but Wife was ultimately unable to refinance the mortgage. Husband thereafter timely appealed.

Issues

Husband raises three issues, which we have restated for clarity:

(1) Whether the trial court erred in awarding alimony in futuro to Wife?
(2) Whether the trial court erred in ordering Husband to pay a portion of Wife's attorney's fees?
(3) Whether the trial court erred in its assignment of debt by requiring Husband to remain on the mortgage of the marital home although the trial court awarded ownership of the marital home to Wife?

Wife presented one issue: Whether this Court should award her costs and attorney's fees on appeal should she prevail.

Discussion

I.

First, we will discuss Husband's argument regarding the trial court's decision to award Wife alimony in futuro. Husband's argument here is two-fold. Husband initially argues that there was no basis for the trial court to award Wife alimony in general. Next, Husband asserts that even if Wife was entitled to alimony, the trial court erred in awarding Wife alimony in futuro. We will discuss each argument in turn.

A.

Tennessee courts have "consistently recognized that trial courts have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Parrish v. Parrish*, No. W2013-00316-COA-R3-CV, 2013 WL 3203352, at *5 (Tenn. Ct. App. June 21, 2013) (citations omitted). Further, a trial court's "'decision regarding spousal support is factually driven and involves the careful balancing of many factors.'" *Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)). Accordingly, upon review, appellate courts are "disinclined to second-guess a trial judge's spousal support decision." *Kinard*

*v. Kindard,* 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Instead, when reviewing a spousal support award, an appellate court's role is to "determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support." *Parrish*, 2013 WL 3203352, at \*5 (citing *White v. Vanderbilt Univ*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc .*, 318 S.W.3d 328, 335 (Tenn. 2010)). Therefore, when an appellate court is "reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski*, 350 S.W.3d at 105−06 (citing *Wright*, 337 S.W.3d at 176; *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010)).

Because a trial court's decision regarding the type, length, and amount of alimony turns upon the unique facts of each case, courts may consider many factors, "including, but not limited to the factors contained in Tennessee Code Annotated section 36-5-121(i)." *Parrish*, 2013 WL 3203352, at \*6. These statutory factors include:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

- 4 -

(8) The provisions made with regard to the marital property as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The most important factors to consider, however, are the disadvantaged spouse's need and the obligor's ability to pay. *Parrish*, 2013 WL 3203352, at \*7 (citing *Gonsewski*, 350 S.W.3d at 109–10).

Turning to the case at bar, Husband argues that alimony is an inappropriate remedy in this case because Wife's post-divorce standard of living is at a reasonably comparable status as her standard of living during the marriage. To determine whether the trial court's award of alimony to Wife was an inappropriate remedy in this case, we must review the trial court's findings and the statutory factors listed above. It is important to note, however, that "[o]ur role is only 'to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable.'" *Id.* at \*11 (quoting *Gonsewski*, 350 S.W.3d at 105).

The trial court made the following findings with regard to its award of alimony:

> The Court has considered [the applicable] factors. In this case, the parties have been married 26 years. Both parties have been employed generally throughout the marriage until Wife was injured in the wreck. The parties have joint real estate which they both have worked in and contributed to, to produce family income. Wife has a debilitating physical issue which prevents her from working in the public sector to any extent. She is 60 years old. Neither party needs any further training. The marital assets are divided fairly equally. The parties have enjoyed what the Court would consider to be a middle class standard of living, which means they were able to purchase a home, other real estate, vehicles, meet all of their bills and credit card payments and generally do what they wanted to do. Wife utilized part of her pension funds to make a down payment on the marital

residence on Greenhill Drive. In considering the Wife's need, the Court finds that she has a real need of $4,216.00 per month according to her adjusted Financial Affidavit which the Court has adjusted. She has $2,741.00 in steady income. Husband has steady income of $3,861.00 per month and a real need of $2,718.00 per month according to his Affidavit, which the Court also has adjusted. Fault in the breakup of the marriage has been found to lie with the Husband. The Court is aware that the Husband may retire in a few years, and that any award might be adjusted at that time. The Husband would also reap some tax benefits from the payment of the alimony and Wife would be required to pay tax on the award.[1]

Clearly, the trial court properly considered the factors under section 35-6-121, including: (1) the long duration of the marriage, *see* Tenn. Code Ann. § 36-5-121(i)(1); (2) the marital standard of living, *see* Tenn. Code Ann. § 36-5-121(i)(9); (3) the parties joint contributions to the marriage, *see* Tenn. Code Ann. § 36-5-121(i)(10); (4) the fault for the breakup of the marriage, *see* Tenn. Code Ann. § 36-5-121(i) (11); (5) the age of the parties and the fact that further training is unnecessary and undesirable, *see* Tenn. Code Ann. § 36-5-121(i)(2) & (4); and (6) the marital property distribution, *see* Tenn. Code Ann. § 36-5-121(i) (8). These largely undisputed factors, coupled with the other factors below, do not support Husband's contention that the trial court committed an abuse of discretion in determining that Wife was entitled to alimony in this case.

Importantly, the trial court also found that due to Wife's physical condition, she is largely unable to work outside the home or earn greater income. *See* Tenn. Code Ann. § 36-5-121(i)(5). As such, Wife's earning capacity is well below that enjoyed by Husband. *See* Tenn. Code Ann. § 36-5-121(i)(1). Husband appears to dispute the trial court's finding that Wife's disability prevents her from working in the public sector. In his brief, he asserts that "Wife acknowledged her disability would not prevent her from being able to manage rental properties." After a careful examination of the record, it appears that Husband has somewhat mischaracterized Wife's statement regarding her ability to "manage" her rental property. Wife testified that although she can still take care of the financial responsibilities of the rental property, i.e. writing and depositing checks, paying bills, etc., her disability prevents her from repairing or remodeling the rental property, all of which Wife considers as "managing" the property. Thus, a better characterization of Wife's testimony would be that Wife acknowledged that her disability did not keep her from managing the finances of the properties, but it did keep her from performing any physical managerial duties. Given that Wife has not worked in any greater capacity following her 2007 accident, which undisputedly rendered her partially disabled, we conclude that the evidence does not preponderate against the trial court's factual finding on Wife's ability to earn income beyond her current amount.

---

[1] Husband did not designate as an issue on appeal the trial court's adjustment of his expenses.

Wife's need and Husband's ability to pay likewise support the award of alimony in this case. "Although each of the [] factors [contained in section 36-5-121] must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" ***Gonsewski***, 350 S.W.3d 99, 110 (Tenn. 2011) (quoting ***Riggs v. Riggs***, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) (citations omitted)). Here the trial court found that Wife had a real need of $4,216.00 per month, and an income of $2,741.00, leaving her with a deficit of $1,475.00 per month. Husband, on the other hand, has an income of $3,861.00 and a real need of $2,718.00 per month, giving him a $1,143.00 surplus each month. Considering the above facts, along with Wife's inability to work in the public sector due to her back injury, Wife certainly has the need and Husband has the ability to pay. Given the totality of the circumstances, the trial court applied the correct legal standards, made sufficient findings of fact, and did not make a clearly unreasonable decision. Accordingly, the trial court did not abuse its discretion in awarding Wife alimony in this case.

Husband, however, disagrees with this determination. Husband argues that alimony is an inappropriate remedy in this case because Wife's post-divorce standard of living is at a reasonably comparable status as her standard of living during the marriage. Husband relies heavily on ***Gonsewski*** to support this proposition and asserts that this case is "analogous" to the ***Gonsewski*** case and, "in accordance with the ruling of . . . ***Gonsewski***, the Wife's request for alimony in the case at bar should have been denied." Although there are some similarities between our case and ***Gonsewski***, there are some crucial differences as well.

In ***Gonsewski***, the intermediate appellate court reversed the trial court's denial of spousal support to the wife, and ordered the husband to pay alimony in futuro in the amount of $1,250 per month because "alimony in futuro was necessary to mitigate the harsh economic realities of divorce." ***Gonsewski***, 350 S.W.3d at 104–05. The Husband appealed this decision to the Tennessee Supreme Court, which ultimately reversed the Court of Appeals decision and reinstated the trial court's denial of alimony. ***Id.*** at 105. The supreme court found that the parties in ***Gonsewski*** had been married for twenty-one years and had no minor children at the time of the divorce, both had college degrees and both had worked for the majority of the marriage. ***Id.*** at 111. The wife earned $72,000.00 per year working in the field of information technology for the State of Tennessee, and the husband earned $99,900.00 base salary with significant annual bonuses. ***Id.*** The supreme court, however, also found that husband's annual bonuses were expected to decrease due to the economic downturn and the completion of a long-term project. ***Id.*** Further, both parties were in their forties at the time of the divorce with no physical or mental disabilities, and both parties received comparable shares of the marital property. ***Id.***

Similarly, in our case, the parties had been married over twenty years, had no minor children at the time of the divorce, and received fairly equal shares of the marital property. *Id.* Additionally, in both cases the husband was found to be at fault for the divorce, and both wives had some post-secondary education. *Id.* The differences in the two cases, however, are significant. In *Gonsewski*, the wife was in her early forties at the time of the divorce, was a long-time employee of the State of Tennessee, and earned around $72,000.00 per year with longevity bonuses. *Id.* Conversely, Wife in our case is approximately 20 years older, does not hold a steady job, and earns around $32,000.00 of steady income per year. It is also important to note that although both women had some formal college education, the wife in *Gonsewski* earned a college degree while Wife in our case only completed three years of college. *Id.* Moreover, the wife in *Gonsewski* had no physical disabilities whatsoever at the time of the divorce that hindered her from working and earning an income; however, Wife in the case at bar is disabled causing her to be unemployed. *Id.*

Perhaps, though, the most significant difference between the two cases is the procedural posture of each case. In *Gonsewski*, the trial court did not award the wife alimony. The Court of Appeals, however, reversed the trial court's decision on spousal support, disagreeing with the trial court's conclusion that this was not an appropriate case for alimony. *Id.* at 104–05. The Tennessee Supreme Court ultimately reversed the Court of Appeals and reinstated the trial court's decision. *Id.* at 105. In making its decision, the supreme court noted the facts contained in the record regarding the husband's and wife's education and income, which is more fully discussed *supra*. The court went on to explain that "[i]n short, [w]ife has the ability to support herself and, absent an abuse of discretion, we are not inclined to second-guess the trial court's decision not to award alimony in futuro." *Id.* at 112. Thus, in *Gonsewski*, the supreme court made its decision in light of the trial court's determination *not* to award alimony and the relatively narrow standard of review prescribed to appellate courts in reviewing spousal support awards.

*Id.* As the court explained:

> The trial court was aware of all of the foregoing facts and circumstances when it denied Wife's request for alimony in futuro. As indicated above, an appellate court should not reverse a trial court's alimony decision unless the trial court has abused its discretion. This standard does not permit the appellate court to substitute its judgment for that of the trial court. Viewing the foregoing evidence in a light most favorable to the trial court's decision, we find no abuse of discretion in the trial court's decision not to award alimony in futuro.

*Id.* (citations omitted).

Conversely, in our case, the procedural posture is exactly the opposite. The trial court, after hearing testimony from each party, awarded Wife alimony. Although there are some similarities between our case and *Gonsewski*, we cannot second guess the trial court's determination absent some showing that the trial court abused its discretion. *See. Gonsewski*, 350 S.W.3d at 112 (holding that appellate courts "are not inclined to second-guess the trial court's decision" absent an abuse of discretion); *see also Parrish*, 2013 WL 3203352, at *5 (stating that courts have "consistently recognized that trial courts have broad discretion to determine whether spousal support is needed"). Here, the evidence at trial showed that Wife, who Husband's attorney described as "elderly" at oral argument,[2] had a need for alimony and a permanent disability that hinders her ability to work. There is also no question that Husband has the current ability to pay alimony. Considering the totality of the factors above, we cannot conclude that the trial court abused its discretion in determining that this was an appropriate case for the award of periodic alimony.

B.

Having determined that the trial court did not abuse its discretion in awarding Wife alimony, we will next address Husband's argument that "alimony in futuro is inappropriate given the state of Tennessee's legislative prejudice against such awards." Tennessee recognizes four separate types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1). Because the appropriate type of alimony is in dispute in this case, a short overview of each type of alimony is helpful.

Alimony in futuro, which is at issue here, "is a long-term form of support . . . [that] is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible." *Parrish*, 2013 WL 3203352, at *5 (citing *Gonsewski*, 350 S.W.3d at 107). Said another way,

> "[a]limony in futuro is appropriate when the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse."

*Gonsewski*, 350 S.W.3d at 107−08 (citing Tenn. Code Ann. § 36-5-121(f)(1)).

---

[2] The undersigned, along with his learned colleagues, do not necessarily agree that reaching the age of sixty qualifies an individual as "elderly," lest this entire panel meet the definition.

Alimony in solido is another form of long term support. *Id.* at 108. "The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term." *Id.* (citing Tenn. Code Ann. § 36-5-121(h)(1); ***Broadbent v. Broadbent***, 211 S.W.3d 216, 222 (Tenn. 2006)). Alimony in solido, unlike alimony in futuro, is "generally not modifiable and does not terminate upon death or remarriage." *Parrish*, 2013 WL 3203352, at *5 (citing ***Gonsewski***, 350 S.W.3d at 108). Further, alimony in solido "'may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate.'" *Id.* (quoting Tenn. Code Ann. § 36-5-121(d)(5)).

The third form of alimony recognized in Tennessee is rehabilitative alimony, which is a short term form of support that allows the economically disadvantaged spouse to obtain the education or training in order to become self-reliant after a divorce. *Id.* (citing ***Gonsewski***, 350 S.W.3d at 108). Thus, the purpose of rehabilitative alimony is much different than alimony in futuro, which is "to provide long-term support when the economically disadvantaged spouse is unable to achieve self-sufficiency." *Gonsewski*, 350 S.W.3d at 108.

Lastly, transitional alimony is awarded where economic rehabilitation is unnecessary and is designed to "'aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income.'" *Parrish*, 2013 WL 3203352, at *5 (quoting ***Gonsewski***, 350 S.W.3d at 109). In essence, transitional alimony is "a form of short-term 'bridge-the-gap' support designed to 'smooth the transition of a spouse from married to single life.'" *Id.* (quoting ***Mayfield v.. Mayfield***, 395 S.W.3d 108 (Tenn. 2012) (citing ***Engesser v. Engesser***, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010)). This type of alimony may only be modified if (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree, decree of legal separation, or order of protection; or (3) the recipient spouse lives with a third person following divorce. *Id.* (citing Tenn. Code Ann. § 36-5-121(g)(2)).

As pointed out by Husband, the statutory framework regarding spousal support reflects a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido. *Gonsewski*, 350 S.W.3d at 109; *Parrish*, 2013 WL 3203352, at *6. The preference stems from short term alimony's aim to "rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible." *Gonsewski*, 350 S.W.3d at 109 (citing Tenn. Code Ann. § 36-5-121(d)(2)–(3); ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004); ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003)). Therefore, while the legislative preference does not entirely eliminate an award of long-term support, "alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-

- 10 -

term support is necessary." *Id.*; *see Bratton*, 136 S.W.3d at 605; *Robertson v. Robertson*, 76 S.W.3d 337, 341–42 (Tenn. 2002).

Husband argues that "considering the legislative prejudice against permanent alimony, the Wife should not be granted an award of alimony in futuro." Respectfully, we disagree. Although there is a legislative preference for awarding rehabilitative alimony, a court may still award alimony in futuro under certain circumstances. *See id.* at 108 ("[Alimony in futuro] can be awarded where 'the court finds that there is a relative economic disadvantage and that rehabilitation is not feasible.") (quoting Tenn. Code Ann. § 36-5-121(f)(1) (citations omitted)). Moreover, the trial court's decision regarding the type of alimony to be awarded to the disadvantaged spouse, like other alimony decisions, is reviewed under the narrow abuse of discretion standard. *See Riggs v. Riggs*, 250 S.W.3d 453, 456–57 (Tenn. Ct. App. 2007) (noting that the "type of alimony" awarded "is within the sound discretion of the trial court in view of the particular circumstances of the case").

This Court has previously held that alimony in futuro was the appropriate type of alimony in circumstances similar to the case-at-bar. For example, in *Edwards v. Edwards*, No. E2007-1680-COA-R3-CV, 2008 WL 3245569, (Tenn. Ct. App. Aug. 8, 2008), the Court of Appeals modified the award of alimony from transitional alimony to alimony in futuro. In a similar factual scenario as our case, the parties were married for sixteen years, wife was sixty-one years old at the time of the trial, was disabled and receiving social security disability benefits, completed two years of college, and was employed until she became disabled during the marriage. *Id.* at *1. The trial court awarded the wife transitional alimony for twelve months because "Wife should be able to generate sufficient income from the property awarded to her to take care of her needs." *Id.* at *3. This Court, noting that "'[t]he statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open ended support[,]" *Bratton*, 136 S.W.3d at 605 (quoting *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998)), determined that the evidence preponderated against the trial court's finding. *Id.* at *8. The Court of Appeals explained that the wife in *Edwards* was disabled and receiving disability benefits, was unable to go back to work, and that her monthly expenses exceeded her monthly income. *Id.* ("The evidence in the record on appeal shows that Wife has multiple sclerosis, that she went on disability in 2000, and that she is unable to go back to work. Wife has shown an income of $852.00 per month and expenses of $3,026.00 per month."). Moreover, the Court of Appeals noted that while the wife did receive almost $500,000.00 in assets from the divorce and "will be able to generate income from these assets, there was no proof that she will be able to generate enough to meet her needs." *Id.* Lastly, this Court pointed out that the husband received a greater share in the estate and will also be able to generate income from the assets he received. *Id.* Accordingly, the Court of Appeals held that the wife "has shown economic disadvantage relative to [h]usband and has shown that rehabilitation is not feasible. The evidence shows that [w]ife has a need for alimony in

futuro and [h]usband has the ability to pay." *Id.* Thus, even applying the narrow abuse of discretion standard of review necessary to overturn a trial court's decision, this Court concluded that these facts supported an award of alimony in futuro.

The trial court here made the determination to award Wife alimony in futuro for many of the same reasons. The wives in both cases (1) had long-term marriages; (2) were approximately sixty years old; (3) were undisputedly disabled and receiving social security disability as income; (4) attended college but did not earn a degree; (5) were employed until they became disabled; (6) received property in the divorce that would generate income; and (7) could not return to work due to their disability. And, perhaps most importantly, both wives' expenses exceeded their monthly income and both husbands received more assets in the divorce and were found to have the ability to pay alimony to their former wives. Therefore, as the Court of Appeals found this evidence sufficient to overcome the legislative preference for short term alimony in *Edwards*, we too, find that the evidence presented is sufficient to support the trial court's determination that alimony in futuro is appropriate in this case.

Husband also asserts that the "[t]rial [c]ourt opined that wife could not be 'rehabilitated'; however, the [c]ourt did not address the other factors necessary to justify an award of alimony in futuro." We respectfully disagree. In at least one recent case, the husband made a similar argument regarding whether or not the trial court "address[ed] the other factors necessary to justify an award of alimony in futuro" asserting that "the trial court failed to find that rehabilitation was not feasible before awarding alimony in futuro." *Tooley v. Tooley*, No. M2017-00610-COA-R3-CV, 2018 WL 1224946, at *4 (Tenn. Ct. App. Mar. 8. 2018). In *Tooley*, this Court noted that although husband was correct in stating that the trial court's order did not "explicitly find that economic rehabilitation was not feasible[;]" the trial court's order did find that the wife in *Tooley* had enormous responsibility caring for the parties disabled daughter that "*preclude[d] her from entering the workforce on a full-time basis.*" *Id.* at *6. Thus, the Court of Appeals determined that

> Th[e above] language is a finding regarding economic rehabilitation. Because Wife is precluded from working full-time due to her responsibilities caring for [her daughter], she cannot achieve an earning capacity that provides her a post-divorce standard of living comparable to that enjoyed during the marriage or to that enjoyed post-divorce by Husband. Thus, the trial court implicitly found that economic rehabilitation is not feasible.

*Id.*

The trial court's findings in this case are similarly sufficient. First, the court noted that alimony in futuro was appropriate because it is the type of alimony "utilized to

- 12 -

provide financial support to a spouse who cannot be rehabilitated." The trial court further specifically stated in its analysis that "Wife has a debilitating physical issue which *prevents her from working in the public sector to any extent. She is 60 years old*." (emphasis added). Because of Wife's disability, she is unable to work in any more than a limited manner, and due to her age, it is likely that long-term support is necessary. As previously discussed, the evidence regarding Wife's disability and ability to work does not preponderate against the trial court's finding on this issue. Thus, as in *Tooley*, the trial court did make sufficient findings regarding economic rehabilitation in this case.

Husband additionally argues that the trial court's $800.00 award is arbitrary. Again, we disagree. As described in more detail above, the trial court found that Wife was at a deficit of $1,475.00 per month, while Husband had a $1,143.00 surplus each month. Further, Wife testified that she believed that she could "get by" receiving $850.00 per month from Husband in alimony. Thus, considering the trial court's evaluation of each parties' income and real need, in addition to Wife's belief that she could live with Husband paying her $850.00 per month, the trial court's determination to award Wife $800.00 in alimony is hardly arbitrary. Accordingly, the trial court did not abuse its discretion in awarding Wife alimony in futuro.

## II.

Husband next argues that the trial court abused its discretion in awarding Wife $7,500.00 in attorney's fees as alimony in solido. "[T]rial courts are afforded wide discretion in determining whether there is a need for attorney's fees as alimony in solido, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion." *Cain-Swope v. Swope*, 523 S.W.3d 79, 100 (Tenn. Ct. App. 2016) (citing *Gonsewski*, 350 S.W.3d at 113). Trial courts must consider the factors regarding alimony in making their decision regarding the award of attorney's fees. *Id.* "A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses." *Gonsewski*, 350 S.W.3d at 113 (citing *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997)). An award of attorney's fees in such cases is only appropriate "when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them." *Id.* (citations omitted).

Here, the trial court found that

In this case, Husband sought a divorce from Wife, but did not set forth any significant reason why the 26 year marriage should be dissolved. Husband was aware of Wife's disability. Husband has been found at fault in the breakup of the marriage. Husband has a steady income and Wife is relying upon alimony, rents, and pension funds. Because of Husband's demand for a divorce, Wife was required to protect her interests by filing for divorce

- 13 -

and seeking a division of property and had to take steps to protect her interests in support from her Husband. The assets were significant and in some fashion, complicated. Wife has no pool of funds with which to pay her attorney and her division of property is close to equal that of the Husband and is not liquid. Wife is entitled to an award of attorney's fees, at least a partial award. Wife's counsel filed an Attorney's Fee Affidavit indicating that Wife has incurred $11,863.55 in the divorce case. The case was tried over a two day period. The Court finds that Wife's attorney's fee request should be granted in the amount of $7,500.00. Wife is therefore awarded alimony in solido from the Husband in the amount of $7,500.00 as a judgment.

After reviewing the facts of this case, we have determined that the trial court did not abuse its discretion in awarding wife alimony in solido in the amount of $7,500.00. Here, the trial court considered the relevant statutory factors used in making alimony determinations noting that the parties were married for twenty-six years, Tenn. Code Ann. § 36-5-101(i)(3), Wife's disability, Tenn. Code Ann. § 36-5-101(i)(5), Husband's fault in the divorce, Tenn. Code Ann. § 36-5-101(i)(11), and the sources of incomes of each party, Tenn. Code Ann. § 36-5-101(i)(1). Further, the trial court essentially found that Wife's need for an attorney stemmed from Husband seeking a divorce, and that "Wife has no pool of funds with which to pay her attorney and her division of property is close to equal that of the Husband and is not liquid[,]" i.e. that Wife lacked sufficient funds to pay for her own legal expenses and/or paying her own legal expenses would deplete her resources. *See* **Gonsewski**, 350 S.W.3d at 113. Moreover, the trial court awarded Wife a little over sixty percent of the requested attorney's fees, rather than the full amount. Accordingly, the trial court did not abuse its discretion in awarding Wife alimony in solido in the amount of $7,500.00.

III.

Lastly, Husband argues that the trial court erred in its assignment of debt by requiring him to remain on the mortgage for the marital home. Husband essentially argues that leaving him on the mortgage places an undue and unfair burden on him leaving him liable for payment of the debt if Wife defaults. He also asserts that the court should have ordered a sale of the home. The division of marital property is a finding of fact, thus, trial courts have "'wide latitude in fashioning an equitable division of marital property.'" **Forbess v. Forbess**, 370 S.W.3d 347, 354 (Tenn. Ct. App. 2011) (quoting **Altman v. Altman**, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005)). As we have previously stated:

> Trial courts have broad discretion in fashioning an equitable division of marital property, . . . and appellate courts must accord great weight to a trial court's division of marital property. . . . Accordingly, it is not our role to

tweak the manner in which a trial court has divided the marital property. . . . Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable.

***Owens v. Owens***, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (citations omitted); *see also **Altman v. Altman***, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005) ("[W]e will ordinarily defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence."). To some extent, this issue also involves the trial court's decision with regard to its disposition of Husband's motion to alter or amend. The trial court's decision with regard to a motion to alter or amend is reviewed for an abuse of discretion. ***Discover Bank v. Morgan***, 363 S.W.3d 479, 487 (Tenn. 2012) (citing ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003); ***Linkous v. Lane***, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008)).[3] Respectfully, we are not persuaded by Husband's argument for several reasons.

First, the Rules of the Court of Appeals "set out specific requirements for the contents of a brief in a domestic relations case in which a party challenges a trial court's disposition of marital property." ***Townsend v. Townsend***, No. W2004-02034-COA-R3-CV, 2005 WL 3416310, at *6 (Tenn. Ct. App. Dec. 14, 2005). The Court of Appeals Rule 7 states

> In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

Tenn. R. Ct. App. 7(a). Thus, if "a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property." ***Akard v. Akard***, No. E2013-00818-COA-R3-CV, 2014 WL 6640294, at *4 (Tenn. Ct. App. Nov. 25, 2014) (no perm. app. filed). Here, Husband clearly takes issue with the classification and division of marital property and debt,

---

[3] We note that Husband did not designate the adjudication of his motion to alter or amend as a separate issue in his brief.

stating in his issue that "the trial court erred *in its division of assets and the assignment of debt*[.]" (emphasis added). Husband's brief, however, does not contain any table in compliance with Rule 7.[4] Although this Court may "suspend the requirements of Rule 7 for 'good cause[,]'" *Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, at *7 (Tenn. Ct. App. June 23, 2016) (quoting Tenn. R. Ct. App. 1(b)), "[i]t is 'well settled' that where an appellant fails to comply with Rule 7, he or she waives all issues relating to the rule's requirements." *Smith v. Smith*, No. E2017-00515-COA-R3-CV, 2017 WL 6467153, at *6 (Tenn. Ct. App. Dec. 18, 2017) (quoting *Rountree v. Rountree*, 369 S.W.3d 122, 133 n.7 (Tenn. Ct. App. 2012)). Under these facts, however, we find no such cause. "[T]he [Tennessee] Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." *Bean v. Bean*, 40 S.W.3d 52, 54–55 (Tenn. Ct. App. 2000) (quoting *Crowe v. Birmingham & N.W. Ry. Co.,* 156 Tenn. 349, 1 S.W.2d 781 (1928)).

We further conclude that Husband has waived this argument because he makes no more than a skeletal argument in support of his contention. *See Sneed v. Bd. of Professional Responsibility*, 201 S.W.3d 603, 615 (Tenn. 2010) ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). As we perceive it, Husband's argument centers on his contention that the trial court erred in failing to order a sale of the marital home once it became clear that Wife was unable to refinance the property. In his brief, however, Husband cites a single case passage from a single case: *Tandy v. Tandy*, 1991 WL 3817 (Tenn. Ct. App. Jan. 18, 1991) as support for his proposition. *Tandy* is a post-divorce case that holds, among other things, that property rights may not be subject to modification after "an adjudication of those rights has been made in the judgment of dissolution of marriage." We agree that *Tandy* indicates that once the trial court's property decision becomes final, the decision cannot later be modified by the trial court due to changed circumstances. *See generally Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993) (holding that payments made as a part of a property division are generally not subject to modification by the court due to changed circumstances). Husband, however, fails to cite any law or authority in support of his argument that the trial court erred in refusing to order that the property at issue be sold once Wife was unable to refinance the property. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her[,]" as such, the issue is waived. *Sneed*, 201 S.W.3d at 615.

---

[4] Husband did attach a table in compliance with Rule 7 in his reply brief. Reply briefs, however, are not vehicles to correct deficiencies in initial briefs. *See, e.g., Roberts v. Roberts*, No. M2017-00479-COA-R3-CV, 2018 WL 1792017, at *9 (Tenn. Ct. App. Apr. 16, 2018) ("[R]eply briefs typically cannot be used to correct deficiencies in initial briefs.").

Given Husband's lack of effort to support his argument, we are not persuaded by Husband's contention that he is wholly without recourse. Husband, as we see it, does have recourse if Wife defaults on the mortgage payments. For example, as Wife concedes in her brief, she may be found in contempt of court if she fails to pay the mortgage on the marital home. Further, if the property were foreclosed it would satisfy the mortgage, although we concede that such an option would likely negatively impact both parties' financial health. Accordingly, we conclude that Husband does, in fact, have recourse if Wife fails to satisfy the mortgage payment.

Lastly, this Court has noted that "[i]t is not uncommon in divorce cases to turn over the ownership of a marital asset to one party while the parties remain jointly liable for the debt associated with the asset." *Long v. McAllister-Long*, 221 S.W.3d 1, 10 (Tenn. Ct. App. 2006). The *Long* court, however, was aware of the problems associated with divorced parties remaining jointly liable for debts:

> While it is possible to order one party to make the monthly payments on a joint debt, the court cannot absolve the other party from his or her liability to the creditor. It is also unlikely that a creditor will readily agree to release a solvent debtor simply because of a divorce. Thus, if the party who has been ordered to make the monthly payments on a joint debt defaults, the other party becomes responsible for the debt and the late charges and runs the risk of damage to his or her credit rating.

*Id.* Thus, the court outlined several solutions to the problem:

> The court may order, or the parties may agree, that the person awarded the property will refinance it or obtain a new loan in his or her own name and then use the proceeds to pay off the existing joint debt. The court may also order, or the parties may agree, that the property will be owned jointly until a date certain when the property must either be financed or sold. Finally, the parties or the courts may include a "hold harmless" provision in the decree or marital dissolution agreement in which the parties are required to indemnify and hold each other harmless from any and all future obligations stemming from ownership of the property they receive.

*Id.* Here, the trial court ordered Wife to "reasonably attempt" to refinance the debt on the marital home. The trial court also ordered Wife to provide Husband with documentation from three banks or mortgage companies that she attempted to refinance the home. It is undisputed that Wife complied with this order. Husband, however, argues that the trial court erred in not ordering a sale of the home after Wife was unable to refinance the mortgage because it rendered the assignment of debts inequitable.[5] Although Husband

---

[5] Husband did not argue that the trial court erred in failing to include a "hold harmless" provision

- 17 -

asserts that the trial court should have ordered a sale of the marital home, Husband provides no proof that such a sale was economically feasible. Further, the **Long** court gives trial courts several reasonable options to consider to attempt to remove the party that is not in possession of the property from being responsible for the debt. **Long**, 221 S.W.3d at 10. Here, the trial court did pick one of the options detailed in **Long**: it ordered Wife to attempt to refinance the marital home, with the caveat that Wife be solely responsible for the debt of the marital home pursuant to the divorce decree. This Court has previously held that the trial court did not err in choosing one option among other reasonable alternatives outlined in **Long**. *See Henegar v. Henegar*, No. M2015-01780-COA-R3-CV, 2016 WL 3675145, at *8 (Tenn. Ct. App. June 29, 2016) (quoting **Long** and holding that the trial court did not abuse its discretion in ordering wife to remain on the mortgage after it "opted for the third option" in **Long** to include a hold harmless provision in the decree or marital dissolution agreement). As we acknowledged in **Henegar**, "We recognize that neither Wife nor Husband is placed in an advantageous situation. However, as the trial judge aptly stated, 'a divorce doesn't mean a fresh start.'" *Id.* Thus, given the trial court's "broad discretion over allocating the responsibility for paying marital debts[,]" we conclude that the trial court did not err by declining to force a sale of the marital home after Wife could not refinance the mortgage. **Long**, 221 S.W.3d at 10.

V.

Finally, Wife argues that she is entitled to attorney's fees if she prevails on appeal. "[T]he decision to award attorney fees incurred on appeal lies solely within the discretion of the appellate court." *Stancil v. Stancil*, No. M2017-01485-COA-R3-CV, 2018 WL 1733452, at *2 (Tenn. Ct. App. Apr. 10, 2018) (citing *Andrews v. Andrews*, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010)). Considering Husband's monthly alimony payment and Wife's previous award of partial attorney's fees from the trial court, we exercise our discretion by denying Wife's request for attorney's fees on appeal.

Conclusion

The judgment of the Madison County Chancery Court is affirmed in all respects. Costs of this appeal are taxed to Appellant, Joey Evi Ingram, and his surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

or ordering that that the property will be owned jointly until a certain date, at which time the property must either be refinanced or sold. As such, we will not address those arguments.